(Decided 18th January. 1894.)

---

BALTIMORE BREWERIES' COMPANY (Limited) *vs.* LYMAN
T. RANSTEAD.

*Negligence—Injury to Property by Water—Action for Dam-*
*ages.*

Where a brewery company collects upon its premises large quan-
tities of water, to be used in its business, and discharges the
water upon the bed of a street, in consequence of which a
neighbor's lot, lying below the level of the street, is flooded, and
becomes miry and unfit for use, the company is liable for the
injury thereby occasioned.

APPEAL from the Superior Court of Baltimore City.

This action was brought by the appellee against the
appellant, a body corporate, to recover damages for inju-
ries sustained by the former through the wrongful act
of the latter, in constructing a wooden sewer or box,
and flooding the premises of the appellee with water
and nauseous liquids discharged from the appellant's

NOTE. The rights as to the flow of surface water are presented with great fullness
in a note to *Gray vs. McWilliams,* (*Cal.*) 21 *L. R. A.,* 593.

brewery.   The facts are sufficiently stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the three following prayers:

1. That if the jury shall find from the evidence in the cause that the defendant constructed from its brewery a sewer or tank through which nauseous and offensive liquids were discharged along the bed of Ridgely street in and upon the plaintiff's lot, that then the plaintiff is entitled to recover in this action.

2. That if the jury find a verdict for plaintiff under the instructions of the Court, then the plaintiff is entitled to such damages as will compensate him for the loss of rent by reason of the act of the defendant's agent or agents, provided the jury believe the plaintiff has suffered said loss and injury.

3. That if the jury find from the evidence, that the plaintiff was the owner of and in possession of a certain lot of ground in Baltimore City, and that the defendant was the owner and in possession of the brewery situated near said lot, and shall further find that the defendant constructed a sewer or wooden box for the purpose of carrying off the water from said brewery, and so constructed the same as that the property of the plaintiff was flooded with water from said brewery, and said lot was thereby damaged, that then the plaintiff is entitled to recover in this case.

The defendant offered the two prayers following:

1. That if the plaintiff's lot was lower than the adjoining street, the plaintiff was not entitled to recover, by reason of water flowing from the street upon his lot, unless the jury find that the quantity of water so flowing upon plaintiff's lot was increased by the discharge of an unreasonable or excessive quantity from the defendant's premises, or that the water discharged from the

defendant's premises upon the plaintiff's lot was noxious or offensive.

2. That if the jury find that the lot of the plaintiff mentioned in the declaration lies below the level of Ridgely street, and that water from Ridgely street naturally flows on the lot of the plaintiff, and if they find that the defendant discharges the water used in its business into Ridgely street, and that said water is conducted through a box trough constructed by the city authorities across Bayard street, to the line of the plaintiff's lot, and is then received in a ditch constructed by the plaintiff, or by his father, then owning the lot, to carry off water entering the lot from Ridgely street, then the plaintiff is not entitled to recover in this suit, because of the water from the defendant's premises flowing into the plaintiff's lot, provided the jury find that the quantity of water so discharged from defendant's premises is not unreasonable or excessive, in view of the character of the locality, and provided the jury also find that the water so discharged from the defendant's lot is not noxious or offensive.

The Court (RITCHIE, J.,) granted the prayers of the plaintiff, and rejected those offered by the defendant. The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*William L. Marbury,* (with whom was *Charles Marshall,* on the brief,) for the appellant.

The defendant had a right, in common with all other abutting owners, to discharge a reasonable amount of water into the street in the ordinary process of draining his premises, and if the city chose to transmit such water to and upon the plaintiff's lot by means of a box trough,

which it, the city, constructed for that purpose, the defendant is clearly not liable for any ensuing damage. In discharging a reasonable quantity of water into Ridgely street, the defendant was doing only what it had a right to do. It was the city's business to see that a proper direction was given to the water thus discharged, and proper drains provided to prevent it from causing damage to adjoining owners.

The failure of the city to do this, was the cause of the damage in this case, or rather the negligent or improper way in which the draining was done. If the city had given its box trough a different outlet, no damage need have been caused. It had the exclusive right to control, and did, in fact, undertake in this case to control the direction in which the water should flow from the time it was discharged into the street.

The defendant cannot be held liable for a failure on the part of the city to give this water a proper direction.

"The owners of lots bordering on streets or ways have or may have, in other respects, a right to make a *reasonable* or proper use of the street or way. What may be deemed such a use depends much upon local situation and public usage; that is, the use which others, similarly situated, make of their land—this being evidence of reasonable use." 2 *Dillon on Municipal Corporations,* sec. 734; *O'Linda vs. Lothrop,* 21 *Pick.,* 292; *Gerard vs. Cook,* 2 *Bos. & Pul.,* 109; *Underwood vs. Carney,* 1 *Cushing,* 285, 292; 24 *Central L. J.,* 51, *Index title, Abutters.*

Even the city is not liable for damage caused to land which is lower than the street, by water flowing from the bed of the street. 2 *Dillon on Municipal Corporations,* secs. 798–800; *Flagg vs. Worcester,* 13 *Gray,* 601; *Gould on Waters,* sec. 227; *Fair vs. City of Phila.,* 88 *Pa. St.,* 309.

*Robert Ludlow Preston,* and *J. Alexander Preston,* for the appellee.

The first prayer of the appellee is a correct statement of the law controlling this class of cases. A land owner who places noxious substances on his land, polluting the surface water or superficially percolating waters passing thence upon the premises of an adjoining owner, to his injury, will be liable in an action for such pollution. *Gould on Waters, sec.* 278, *and cases cited in note,* (*2d Ed.*)

Such pollution is a nuisance, and the familiar maxim, *sic utere tuo ut alienum non laedas* applies. *Gawtry vs. Leland,* 31 *N. J. Eq.,* 385, 389; *Jutte vs. Hughes,* 67 *N. Y.,* 267, 272; *Charles vs. The Finchly Local Board,* 48 *L. T. N. S.,* 569, 572.

The third prayer of the appellee differs from the first only in the fact that it instructs the jury that the plaintiff is entitled to recover if the lot of the appellee was flooded with water by the construction of the sewer by the appellant and thereby damaged. This prayer properly instructed the jury. *Scott vs. Bay,* 3 *Md.,* 431; *Lawson vs. Price,* 45 *Md.,* 123; *Lewin vs. Simpson,* 38 *Md.,* 468; 6 *Am. & Eng. Encyclopedia of Law,* 15 *and* 16, (*notes and cases cited.*)

Water must be drawn off in some natural channel in the vicinity, or by any other means preferred, provided no damage is done to others by this plan. *McCormick vs. The Kansas· City, St. Joseph &· Council Bluffs R. R. Co.,* 70 *Mo.,* 359.

A land owner cannot increase the quantity of water upon another's property, in any different manner from that in which the same would have naturally flowed upon it. *Livingston vs. McDonald,* 21 *Iowa,* 160, 170; *Miller vs. Laubach,* 11 *Wright,* (47 *Pa. St.,*) 154; *Templeton vs. Voshloe,* 72 *Ind.,* 134.

An owner of land cannot even drain off *surface water* in such a way as to injure his neighbors. *O'Brien vs.*

*City of St. Paul,* 25 *Minn.,* 331, 334–5–6; *Noonan vs. City of Albany,* 79 *N. Y.,* 470.

"Where the surface waters are collected and cast in a body upon the proprietor below, unless it is a natural water-course, the lower proprietor sustains a legal injury, and may have his action therefor." *Cooley on Torts,* 580.

No right exists to discharge water on another's land by artificial means, even if same would naturally flow that way. *McCormick vs. The Kansas City, St. Joseph & Council Bluffs R. R. Co.,* 70 *Mo.,* 359.

ROBINSON, C. J., delivered the opinion of the Court.

The plaintiff is the owner of an enclosed lot of ground in Baltimore City, bounded on the north by Bayard street, and on the east by Ridgely street, containing about five acres of land. The lot had been used as a cattle or stock yard, from which the plaintiff derived an annual revenue of from $400 to $500.

The defendant company is the owner of a Brewery abutting on Ridgely street, and uses from three to four hundred barrels of water daily for the purpose of cooling the beer; and in addition to this, it uses from three to four barrels of water, mixed with acids and ashes, once a week for the purpose of scouring the copper coils. All the water thus used is conveyed from the brewery to a sewer box built inside the brewery lot, and running inside the lot, about eighty feet, to the west side of Ridgely street, and then down the street one hundred and twenty-eight feet to a wooden box or trough built by the city authorities across Bayard street, and through this trough the water is discharged upon the plaintiff's lot.

The plaintiff proved that, in consequence of this discharge of water upon his lot, it had become miry and unfit for use, and he further proved that the water was

mixed with vegetable matter, the refuse grain used in brewing the beer, and was noxious and offensive. Assuming these facts to be found by the jury, and it is upon this assumption the plaintiff rests his case, there can be no question, it seems to us, as to the liability of the defendant. That it had no right to discharge noxious and offensive water through its sewer to the wooden trough built across Bayard street, and thence upon the property of the plaintiff, is conceded. And it is equally clear, we think, that the defendant had no right to bring or collect upon its premises large quantities of water to be used in the manufacture of beer, and to discharge the water thus used upon the bed of Ridgely street, in consequence of which the plaintiff's property was injured, even though the water was not noxious or offensive.

Having brought this water upon its premises to be used by it for its own purposes, the defendant was bound to provide proper drains or means for its escape, without injury to the property of others. The whole contention of the defendant rests upon the assumption that it has the absolute right to discharge the water used by it in brewing beer, upon the bed of Ridgely street, and if the plaintiff's lot lies below the level of the street, in consequence of which his lot is flooded, the defendant is not liable for the injury, unless the jury shall find that the water so discharged was unreasonable or excessive, in view of the character of the locality. The question is not whether the water discharged upon the bed of Ridgely street, the same not being surface water, was unreasonable or excessive in quantity, having in view the character of the locality, but whether the water thus discharged did in fact come upon the plaintiff's lot. Although the facts are different, the principles upon which the leading case of *Rylands vs. Fletcher, Law Rept.*, 3 *Eng. & Irish Appeals*, 330, was decided would seem to be conclu-

sive as to the defendant's contention. In that case, the defendant, the owner of a mill, constructed a reservoir for the purpose of accumulating water, but the supports being insufficient, the sides of the reservoir gave way and the water percolated through some old and disused coal workings into the plaintiff's colliery, and the House of Lords, affirming the Court of Exchequer, held that the defendant was liable for the injury sustained by the plaintiff. In the Court of Exchequer, BLACKBURN, J., says: "We think that the true rule of law is, that the person who, for his own purposes, brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape." *Fletcher vs. Rylands, Law Rep.,* 1 *Exchequer,* 265, 279. In affirming the Exchequer Chamber, Lord Chancellor CAIRNS says: "The defendants, treating them as the owners or occupiers of the close on which the reservoir was constructed, might lawfully have used that close for any purpose for which it might, in the ordinary course of the enjoyment of land be used, and if, in what I may term the natural user of that land, there had been any accumulation of water, either on the surface, or underground, and if, by the operation of the laws of nature, that accumulation had passed off into the close occupied by the plaintiff, the plaintiff could not have complained that that result had taken place."

"On the other hand, if the defendants, not stopping at the natural use of their close, had desired to use it for any purpose which I may term a non-natural use, for the purpose of introducing into the close that which, in its natural condition, was not in or upon it, for the purpose of introducing water either above or below ground, in quantities, and in a manner not the result of any work or operation on or under the land, and if in con-

sequence of their doing so, or in consequence of any imperfection in the mode of their doing so, the water came to escape and to pass off into the close of the plaintiff, then it appears to me, that that which the defendants were doing they were doing at their own peril; and if, in the course of their doing it, the evil arose, to which I have referred,—the evil, namely, of the escape of the water and its passing away to the close of the plaintiff, and injuring the plaintiff, then for the consequence of that, in my opinion, the defendants would be liable."

Now, in this case, it was held that if one brings or accumulates on his land anything which, if it should escape, may cause damage to his neighbor he does so at his peril. And if this be so, *a fortiori*, where one brings or accumulates on his land water, in large quantities, to be used for any purpose he may see proper, and discharges the water upon the property of his neighbor, he will be liable for the injury thereby occasioned. And such is the case before us. The proof shows that the water used by the defendant in the manufacture of beer is conveyed from its premises by means of a sewer built by the defendant to the west side of Ridgely street, and thence down said street to a trough across Bayard street, and thence upon the land of the plaintiff. And, such being the case, there was no error in granting the plaintiff's prayers, and in rejecting the prayers offered by the defendant.

*Judgment affirmed.*

(Decided 18th January, 1894.)