SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY *v.* BEATTY.

63   65
f89   590

Opinion delivered October 17, 1896.

DANGEROUS PREMISES—LIABILITY FOR INJURY.—The fact that a telephone wire was fastened to a pier on the top of a building overlooking a street in such manner as to cause brick therein to be loosened by the action of wind and rain, or by such acts of persons or things as should have been anticipated, will not render the company which fastened the wire liable for an injury to a person in the street below, caused by the fall of a brick from such pier, unless the injury was due to the failure of the company to use due care in fastening the wire or in maintaining it in a safe condition. So, an instruction which makes the company's liability to depend upon the dangerous character of the fastening, without regard to the question of negligence in making or maintaining the fastening, is erroneous.

INSTRUCTION—USE OF HIGHWAY.—An instruction that if the street in which plaintiff was injured was used as a public highway plaintiff was rightfully therein was misleading, as the fact that one has a right to be on a highway does not relieve him from the duty of exercising care to avoid danger.

EVIDENCE—CITY ORDINANCE—A city ordinance prohibiting any telephone wire from being strung or located in such manner as to threaten danger to the life of any person is inadmissible in evidence in an action against a telephone company for personal injuries caused by the falling of a brick from a pier to which a telephone wire was attached, as the ordinance imposed no additional duty on the company, so far as it affected the issues in the case.

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*W. J. Terry* and *S. R. Cockrill* for appellant.

1. The evidence did not warrant the verdict. But granting that a brick struck plaintiff, is it not more probable that it was knocked off by persons crowding about the fire-wall, than by the guyed cleat? There are several theories that are as probable as that defendant

caused the brick to fall. And if they are equally probable, the proof fails. 57 Ark. 402. Defendant was authorized to stretch its wires as it did. Sand. & H. Dig. secs. 275-7-8. It was not an illegal act. Mark the distinction between doing a legal act in a reasonably careful manner, and doing an illegal act with the greatest care. Cooley on Torts, 69-70, and note 1; *ib.* p. *572. The liability of electric companies is the same as that of individuals or other companies lawfully using structures in or near the highway. It is not liable for remote injuries. The rule, *Causa proxima, non remota, spectatur,* applies here. Thompson, Electricity, sec. 72; 50 Ark. 387; Cooley, Torts, 69-70; 2 Thompson, Neg. p. 1087, sec. 4. For illustrations, see 37 N. E. 773; 4 Daly (N. Y.) 163; Cooley, Torts, p. *572-3; 44 Ga. 251; Ray's Neg. Personal, 110; 86 Pa. St. 153; 2 Thomps. Neg. 1090; 96 Mass. 211; 87 N. Y. 122; 1 Smith, Dam. sec. 29; 30 Iowa, 176; 105 U. S. 249; Whart. Neg. 95; 1 Sh. & Redf. Neg. sec. 35; 1 Smith, Neg. sec. 19; 30 Minn. 74; 57 Ark. 16; 53 Pa. St. 436; 104 *id*. 306; 7 Wall. 52; 160 Mass. 351; 26 C. P. Div. 369. The case "falls under the ordinary rule that when the defendant is charged with *negligence in the use of a structure* which has become defective, it is incumbent on plaintiff to prove that the defect came to the knowledge of defendant, or existed for such length of time that knowledge should be imputed." 64 Iowa, 762. In this case there was no proof of a defect.

2. The court's charge is erroneous. (1) The first instruction took from the jury all question as to plaintiff's contributory negligence. Thompson's Law of Electricity, sec. 73; Croswell, Law Relating to Electricity, sec. 254. (2) In the second the jury is told that "if defendant constructed anything, or permitted any construction used by it to become, unsafe or dangerous," it was guilty of negligence; and in the fourth the

jury is told that it was defendant's duty to keep the pier safe. Now, that is not the measure of defendant's duty. It was bound only to exercise reasonable care in the construction and maintenance of its lines. Croswell, Law Elec. sec. 234; *ib.* 236; 160 Mass. 351; 16 Ark. 308. The instructions are inconsistent, which is reversible error. 32 S. W. 500.

3. The fourth and sixth assume facts not in evidence, and are otherwise erroneous. The sixth leaves the jury to infer that if the brick had been loosened by defendant, although not otherwise insecure or liable to fall, defendant was liable for its fall, though it had been pushed or knocked off by persons leaning against or walking upon the wall. 4 Daly, *supra.*

4. There was no evidence to support an instruction allowing compensation for "outlays in nursing and medicine." 58 Ark. 198.

5. It was error to admit the city ordinance in evidence, and to charge the jury in reference to it. The ordinance was void. 45 Ark. 158–164; Bish. St. Cr. sec. 41; 1 Dill. Mun. Corp. secs. 319–322; Pet. C. C. 122; 1 Paine, 122; Lieber's Herm. 156; 63 Mich. 396; 26 Mich. 221; 49 Md. 217; Horr & Bemis, Mun. Ord. sec. 131. Even if the wires were strung so as to interfere with the work of the fire department, in violation of a valid ordinance, it would still have been necessary to prove that the breach of the ordinance was the proximate cause of the injury. 1 Sh. & Redf. Neg. sec. 27. The purpose of the ordinance was to protect property rights, and to guard the safety of firemen, and they alone can sue for injury. 69 Fed. 808, 814 (8 Ct. Ct. App.)

6. The court erred in refusing defendant's prayers numbered 7 to 13 inclusive. The thirteenth is sustained by 54 Ark. *supra.*

7. It was error to admit McKay's testimony as to conversation with plaintiff. 51 Ark. 509.

*Blackwood & Williams* and *Williams & Bradshaw* for appellee.

1. Upon the whole case the verdict is right, and must on new trial result in a verdict for plaintiff, with perhaps increased damages; therefore it should be affirmed upon the whole record, as appellee had no right to move for new trial, or to appeal on account of smallness of damages, and has not appealed. Sand. & H. Dig. sec. 5840; 44 Ark. 556; 18 *id.* 469.

2. The instructions were more favorable to defendant than it was entitled to, and the case was tried upon the low ground of negligence on the part of defendant, when it was entitled to be tried on the high ground that defendant had created a nuisance—set a dead-fall over the high way, and was absolutely responsible. 18 Minn. 324; 10 Am. Rep. 184; Whart. Neg. secs. 826-7-8; 59 Me. 94; Whart. Neg. sec. 831-2, 840-2; 6 Q. B. 759. The fall of the brick is some evidence of the cleats being improperly placed. Whart. Neg. secs. 841, 842; 4 Har. & C. 403.

3. When the natural consequence of the structure is that ice, snow or water falling on it injures adjacent property or travelers, etc., the owner is liable. Whart. Neg. sec. 843. When one erects a dangerous thing on the property of another, he must guard it, and the fall is *prima facie* evidence of negligence. 54 Ark. 209; 29 Ala. 302. When a thing, dangerous unless particularly guarded, is left unguarded, the party leaving it is responsible for damages to another thereby produced. Wharton, Neg. secs. 851-5, 861; 91 N. Y. 137; Elliott, Highways, p. 447, 74 N. Y. 266. Whether it was a nuisance *per se ab initio*, or became so by negligence, the defendant is liable. Wood, Nuisance, p. 129; 67 U. S. 299. For illustrations, see *Nelson* v. *New Bedford, etc.*, 108 Mass.; 1 Exch. 265; 3 H. L. Cas. 330; Wood, Nuisance,

p. 143; 47 Ga. 263; 2 N. Y. 159; Lloyd on Buildings, sec. 77; 51 Cal. 142; 45 Ind. 429; 11 Md. 1. Any act which unnecessarily incommodes the lawful use of a highway is a nuisance, and is actionable on behalf of one suffering special damages. Lloyd on Building, sec. 222, last clause; 50 N. Y. 679; 1 Exch. 265; 3 Hill, 531; 124 N. Y. 319; 148 Mass. 261; 40 Minn. 127.

4. That it was lawful to string its wires cuts no figure here. The state can never relieve itself of the duty of protecting its citizens, nor grant another the right to injure them, or immunity from liability for injuring them. No matter what the right of franchise, when an injury is done by posts, wires, etc., the corporation is liable in damages to the person injured. Foote & Everett, Law of Corp. 811, 1009 and notes, 1010, 552–3; Webb, Pollock on Torts, pp. 499, 500–1; 39 La. An. 551; 2 So. 395; 72 Cal. 180.

5. The fact that the firemen disturbed the wires does not relieve defendant. If one creates, or by negligence allows, a dangerous thing to obstruct or overhang a highway, he is responsible absolutely *ab initio* for all that can be foreseen as likely to happen. 16 L. R. A. 43; 41 La. An. 1041; 18 Minn. 324, and cases *supra*. The master is not excused for furnishing bad appliances to his servant, because the fellow servant precipitated the injury. McKinney, Fellow Servants, p. 84, sec. 31–2; 54 Ark. 292; 56 *id.* 132; 46 *id.* 207.

6. The old doctrine of "identification" is exploded (Webb's Pollock, p. 580), and the rule is that where two or more independent persons have between them caused damage, any or all are liable. *Ib.* 581–2; *ib.* 508; Elliott on Ways, p. 631; 38 Wis. 33; 10 Mass. 72; 5 Metc. (Mass.), 205; 52 Barb. (N. Y.), 390; 9 Pa. St. 345; 57 Fed. 901. Joint or concurrent wrong-doers may be sued jointly or separately. Webb's Pollock, pp. 230–1; 58 Ark. 655; 49 Fed. 209; 40 *id.* 631; 14 S. W. 291; 132

U. S. 601; Booth on St. Rys. sec. 363; 33 S. W. 426. See particularly 61 Ark. 381.

7. The duty of defendant in regard to its apparatus is clearly defined in 41 La. An. 1041. See 16 L. R. A. 43; 22 *id.* 762; 45 Ill. App. 484; 26 L. R. A. *Jackson* v. *Tel. Co.*; 54 Ark. 133; 54 Ark. 214; 35 N. E. 1127; 25 L. R. A. 552; 28 *id.* 596; 14 S. W. 863; 22 L. R. A. 635; 16 *id.* 545; 19 S. E. 344. See also as to injuries from objects overhanging streets. 1 Thomp. Neg. p. 333, and notes, pp. 343-4-6-7; 2 Dill. Mun. Corp. secs. 1013, 1032-4.

8. *Res ipsa loquitur.* The falling of a brick or wire on a public street is *prima facie* evidence of negligence. 57 Ark. 435; 54 *id.* 209; 61 *id.* 381; 28 L. R. A. 596.

9. There was no error in admitting McKay's testimony. 1 Gr. Ev. secs. 101, 102, 108.

10. The ordinance was valid. Horr & Bemis, Mun. Ord. secs. 15, 217, 229. The power is expressly granted. Sand. & H. Dig., secs. 5132-3, 5146, 5204, 5208. It was sufficient, definite and express, and 45 Ark. 158 does not apply. In cases of doubt such construction will be given as will carry out the object of legislation. Black on Int. Laws, p. 93, 106; 59 N. Y. 53; 9 Wheat. 380; 7 Col. 285; 20 Ala. 54; 102 Pa. St. 190; 22 Pick. 511; Endlich, Const. Stat., secs. 178, 245; *ib.* 247-8. For illustrations, see Horr & Bemis, Mun. Ord. sec. 78; 44 Upper Canada Q. B. 641.

11. The court properly refused defendant's instructions on the subject of contributory negligence. Beach, Cont. Neg. p. 17; *ib.* p. 14, 15, 37; 23 Pa. St. 147; 62 Am. Dec. 323; 2 Ld. Raym. 989; 1 Smith, Lead. Cas. (8 Ed.), 369; 27 Ga. 113, 358; 24 *id.* 75; 17 *id.* 136; Whittaker, Smith on Neg. 59, note; *ib.* 111, 249. Parties rightfully on a highway are not guilty of contributory negligence by being there.

12. Review the objections to instructions given, citing 49 Ark. 182, 423; Horr & Bemis, Mun. Ord. secs. 254–5; 32 S. W. 500; Gr. Ev. sec. 5; 26 L. R. A. *Jackson* v. *Tel. Co.*; 54 Ark. 133; and contend that they were more favorable to defendant than they should have been.

BATTLE, J.   James Beatty brought this action against the Southwestern Telegraph & Telephone Company, and stated in his complaint that the defendant had negligently constructed its wire line from Rock street, in Little Rock, in this state, to the corner of the roof of Carl & Tobey building, in the same city, "and had loosely and carelessly nailed, with only two nails, a piece of wood, two by four inches in size and about two feet long, to an ornamental projection of brick above said roof, and negligently placed said timber so as to project one foot beyond the edge of said brick, where it stood loose and unsecured, making a lever by which the wind could prize the said brick projection loose; which brick projection was about thirty feet above the pavement, and was about twelve inches wide by about sixteen inches high above said wall, which had been built with brick laid in common lime mortar, and stood exposed to abrasions from the weather and wind acting upon said timber; that defendant, by nailing said timber to said projection, weakened and loosened the brickwork thereon by driving said nails between the bricks and mortar, permitted it to become loose and insecure, and permitted said timber to project beyond said brick, and constructed and allowed the wire line therefrom to stretch diagonally across the said roof and over the street, where it was fixed to poles, when a slight pull on said wires would throw the bricks from said projection, and cause them to fall in the street below,—said brick projection on said wall standing perpendicular above said pavement below."   The complaint further alleges that on the

night of the 29th of April, 1892, while the plaintiff was walking on the pavement below, a brick from said projection on said building, so loosened by the carelessness and negligence of the defendant, fell upon the head of the plaintiff, breaking his skull, and rendering him a cripple for life. It further alleged that he had spent large sums of money in trying to save his life and effect a cure, that he had earned from $100 to $125 per month prior to said accident, and that said accident had greatly impaired his capacity to earn money, and concluded by laying his damages at $20,000.

The defendant answered, and denied all the acts or omissions of negligence attributed to it in the complaint; and alleged that its wires and lines were constructed in a safe and secure manner, and that the cause of the accident arose from no fault or neglect on its part.

The following facts are shown by the evidence adduced at the trial: The defendant's telephone wire extended diagonally over the roof of the Carl & Tobey building, which fronts on Markham street, in Little Rock. "The wire was brought in a southerly direction from Rock street, over the Geyer & Adams building, which was on the corner of Markham and Rock streets, and joined the Carl & Tobey building, running diagonally over the roof of the two houses to the front of the Carl & Tobey building at its northeast corner. At the northeast corner of the roof was a pier which extended about nine inches above the fire-wall at the front of the house. The defendant extended its wire over this pier, down the front wall of the building, in order to reach the office of Carl & Tobey, which was down stairs, in the northeast corner of the building, under the pier. It had no wire upon the house except the two used by Carl & Tobey. The wires were carried over the pier by means of a wooden cleat. The cleat rested on the top of the pier. The wires were attached to insulators,

which were attached to the cleat. The wires extending down the front were drawn taut, and fastened in the office of Carl & Tobey; those extending from the other end of the cleat over the roof were also drawn taut, and fastened to a cleat on the fire-wall between the two buildings, and extended to the west wall of Geyer & Adams building on Rock street, where it was again held by a cleat, and thence to a post on Rock street, where it was fastened. It was a short span from the pier to the cleat on the dividing fire-wall between the Carl & Tobey and Geyer & Adams buildings. The cleat on the pier was held in place by three guy-wires, one was fastened to a thirty-penny wire spike which was driven into the wall of the Concordia hall, which rose one story higher than the pier, just a few feet to the east, to prevent the wires, which extended in a south-westerly direction over the roof, from drawing the cleat in that direction; the other two guys were fastened to nails driven in the fire-wall, near the tin roof, immediately beneath the cleat, to prevent the wires which extended down the front of the house into the office from drawing it to the front. The flat surface of the cleat was thus fastened across the top of the pier. * * * * Just three months after the defendant had thus arranged its wires and cleat, a fire occurred at night in a cotton warehouse in the same block with the buildings before referred to, but across the alley in the rear, or to the south of them." Persons gathered on the roof of the Geyer & Adams building, and, one witness says, were also on the roof of the Carl & Tobey house. The plaintiff was on the pavement in front of the Carl & Tobey building, near its east wall, when a missile of some kind struck him on the head and inflicted the injury of which he complains. Evidence was adduced to prove that this injury was caused by the negligence of the defendant, and also to prove that it was not.

In the course of the trial an ordinance of the council of the city of Little Rock was read as evidence, over the objection of the defendant, which provides, among other things, as follows: "No telegraph, telephone, or electric light wire, or other electrical conductor, shall be strung or located in such manner, place, or position, or in such proximity to any other wire or other object, as to threaten risk or danger to the life, property, or person of any one in this city, or to become the probable cause or occasion of accident to any such.  *  *  *  * All wires or electrical conductors used or employed in this city shall be so located, placed and strung as not to unnecessarily or unduly interfere with or obstruct the work or operations of the fire department, or the members thereof, in the extinguishment of fires, or the escape of persons from burning buildings, or the safety of firemen while engaged in the line of duty, nor shall such wires or conductors be so placed or strung as to injure or interfere with, or threaten injury to or interfere with, the property or property rights of others, and whoever shall offend against these or any other requirements or provisions of this ordinance shall be deemed guilty of a misdemeanor."

Among others, the court gave the following instructions to the jury over the objections of the defendant:

"First. If you find from the evidence that the street in front of Carl & Tobey's building was used by the public as a highway, and was recognized by the city as such, then you will find that such street was a highway, and that plaintiff was rightfully therein.

"Second. If you believe from the evidence that defendant constructed anything, or permitted any construction used by it to become, dangerous and unsafe to persons passing on such highway, then such construction became an act of negligence, and defendant would be responsible to plaintiff if injured thereby; provided, such

negligence was the natural and proximate cause of plaintiff's injury."

And four others which were substantially as follows: That it was the duty of the defendant, in fastening its wires upon a brick pier near to or over a street or sidewalk frequented by the public, to do so in such a manner as will not loosen the brick, or cause them to become loose and fall into the street, and to take such precautions in erecting and maintaining such fastenings and other structures and appliances as to make them secure against such ravages of winds and weather as may be expected in the regular course of the seasons, or such other acts of persons or things that may in the natural course of events cause injury to the public, and that might reasonably have been anticipated, and to properly guard and keep the same in a safe condition; and that defendant was liable to plaintiff for any injury which he suffered by reason of the failure to discharge any of these duties.

And another in the following words: "The court instructs the jury that the ordinance introduced by plaintiff, as passed by the city council of the city of Little Rock, October 10, 1888, is only to be considered by the jury in determining the question as to whether the defendant had strung or located their wires in a reasonably safe manner, and so as to make them reasonably safe in the protection of property rights in extinguishing or preventing fires; and so as not to unduly or unnecessarily interfere with or to obstruct the work or operation of the fire department while engaged in the line of their duty."

The following, among other instructions, were given to the jury by the court, at the instance of the defendant:

"The jury are instructed that, if the defendant used ordinary care in stringing, locating and maintaining

its wire and arm on or over the buildings and wall in question, they will find for the defendant."

"The jury is instructed that it is the duty of the owner of the building to keep the walls in repair, and if they find that the plaintiff was injured by a brick falling therefrom from the want of proper mortar or cement to hold it in place, and not from any act of the defendant, they will find for the defendant."

The jury returned a verdict in favor of the plaintiff for $9,000, and the court rendered judgment accordingly. The defendant, after filing a motion for a new trial, which was overruled, appealed.

Liability for dangerous premises.

Appellee insists that the instructions to which appellant objected were more favorable to it than they should have been, and that, therefore, it was not prejudiced by them. His contention is that, if the wires and fastenings of appellant were dangerous, or became so, or if they rendered the pier to which they were attached dangerous, and by means thereof appellee received the injury of which he complains, the appellant is liable to him for the damages occasioned thereby, regardless of unskillfulness or negligence in the stretching and fastening of the same, or in the manner in which they were maintained, and without regard to the right to string the wires in the place they were, and without regard to the question as to the person who caused the injury by means of their instrumentality. Is this contention correct?

No one has the free and unlimited right to use his property in any manner he may desire. The exercise of such right by every one is impossible. The conflicting interests of individuals prevent it. Every one, in becoming a member of society, in order to conserve peace and harmony among its members, concedes to the law-making power the right to regulate the manner and the extent of the exercise of such rights. In the exercise of

the right so conceded, the law requires every one to so use his property as not to injure another, and for the enforcement of this requirement in some cases forbids the exercise of certain property rights in a particular manner, and in some permit it on condition that the person exercising the right shall use ordinary care to avoid injury to others. Hence the liability for damages in every case grows out of the violation of a duty of the injuring to the injured party, and not out of the dangerous character of the act which caused the damages. The law may prohibit the act because it is dangerous, and out of this prohibition the duty is created upon the violation of which the right of action for damages depends. It would be unjust and oppressive to exact of any one the payment of damages to another when he has violated no duty which he owed to him—when he has done him no wrong. For this reason a legal duty is an essential element of negligence, and there can be no negligence where there is no duty.

A few examples will serve to explain what we have said. The old common law of England made it the duty of every man to keep his cattle within the limits of his own possessions. If he failed to keep them up, he failed to discharge his duty, and was liable to the owner of the premises upon which they estrayed for damages done; and this liability did not depend upon any neglect of their owner in failing to keep them up. Here he was required to keep them up, because of their propensities to do mischief when running at large, in order to protect others. For the same reason the owner of any other domestic animal which is known by him to be vicious and accustomed to do hurt is required to keep him secure, and, failing to discharge this duty, is responsible for damages done while he is at large, without regard to the negligence of the owner.

"It is said in an early case," says Judge Cooley, "that where one has filthy deposits on his premises, he whose dirt it is must keep it that it may not trespass. Therefore, if filthy matter from a privy or other place of deposit percolates through the soil of the adjacent premises, or breaks through into the neighbor's cellar, or finds its ways into his well, this is a nuisance. Nor where this is the natural result of the deposit is the question of liability one depending on degrees of care to prevent it. Says Foster, J.: 'To suffer filthy water from a vault to percolate or filter through the soil into the land of a contiguous proprietor, to the injury of his well or cellar, where it is done habitually and within the knowledge of the party who maintains the vault, whether it passes above ground or below, is of itself an actionable tort. Under such circumstances the reasonable precaution which the law requires is effectually to exclude the filth from the neighbor's land; and not to do so is of itself negligence.' Only sudden and unavoidable accident which could not have been foreseen by due care could be an excuse in such a case." Cooley on Torts, p. 673.

But the rule is different as to reservoirs in which water is collected for useful and ornamental purposes. As to them, Judge Cooley says: " It is lawful to gather water on one's premises for useful and ornamental purposes, subject to the obligation to construct reservoirs with sufficient strength to retain the water under all contingencies which can reasonably be anticipated, and afterwards to preserve and guard it with due care. For any negligence, either in construction or in subsequent attention, from which injury results, parties maintaining such reservoirs must be responsible. We say nothing now of injuries arising from the flooding of lands by reservoirs, which, by raising the water, must and do have that effect, but confining our attention to the case of

reservoirs which cause injuries to the lower proprietors only as they break away. The American decisions seem to plant the liability on the ground of negligence, and the party constructing or maintaining the reservoir is held liable, not at all events, but as he might be if he had negligently constructed a house which fell down, or invited another into a dangerous place." After reviewing English authorities upon this subject, he says: "A comparison of these cases seems to show the English rule to be as follows: Whoever gathers water into a reservoir, where its escape would be injurious to others, must, at his peril, make sure that the reservoir is sufficient to retain the water which is gathered into it. But, if thus sufficient in construction, the liability for the subsequent escape of the water becomes a question of negligence. The proprietor is not liable if the water escapes because of the wrongful act of a third party, or from *vis major*, or from any other cause consistent with the observance of due and reasonable care by him. Due care must of course be a degree of care proportioned to the danger of injury from the escape; but it is not very clear that the English rule, as thus explained, differs from that of this country." Cooley on Torts, (2d Ed.) pp. 676, 680; *Fletcher* v. *Rylands*, L. R. 1 Exch. 265; S. C., L. R. 3 H. L. 330; *Nichols* v. *Marsland*, L. R. 10 Exch. 255; S. C. 1 Thompson on Negligence, p. 88; *Box* v. *Jubb*, 1 Thompson, Negligence, p. 90; Thompson, Electricity, secs. 64–67.

"One who erects on his own premises a steam boiler, having in it no defect known to him, or which he might have discovered by the exercise of ordinary care and skill, that is to say, by the application of known tests, and who operates it with care and skill, is not answerable to an adjacent proprietor for damages caused by its explosion." So a corporation operating a railway by the dangerous agency of steam is not responsible for

injuries caused thereby, unless they be the result of negligence of the owner or its agents. In both these cases the owner is not denied the right to use his property, and is limited only in the manner in which it is used, although to do so was dangerous to others.

In *Railway Company* v. *Hopkins*, 54 Ark. 209, the court in effect held that one has a right to maintain a heavy sign overhanging a sidewalk in a much frequented part of a city, provided he used ordinary care in keeping it securely fastened. The court said: "The defendant was under a duty to the public to exercise common prudence to place and keep its sign in such position as not to endanger the safety of pedestrians in the street."

In the *City Electric Street Railway Company* v. *Conery*, 61 Ark. 381, this court said: "Electric Companies are bound to use 'reasonable care in the construction and maintenance of their lines and apparatus,—that is, such care as a reasonable man would use under the circumstances,—and will be responsible for any conduct falling short of this standard.' This care varies with the danger which will be incurred by negligence. In cases were the wires carry a strong and dangerous current of electricity, and the result of negligence might be exposure to death, or most serious accidents, the highest degree of care is required. This is especially true of electric railway wires suspended over the streets of populous cities or towns. Here the danger is great, and the care exercised must be commensurate with it. But this duty does not make them insurers against accidents; for they are not responsible for accidents which a reasonable man in the exercise of the greatest prudence would not, under the circumstances, have guarded against."

In this state any person, or corporation organized for the purpose may construct, operate, and maintain telephone lines along and over the streets of the cities

and towns of this state, provided they do not obstruct the same.   This right belongs to that class in the exercise of which due care and skill is enjoined.   In the exercise of it, it was the duty of appellant to use such skill and care in selecting or constructing its piers and poles, and in suspending and fastening its wires and cleats upon the same, and in making, maintaining, and keeping them, the poles, piers, wires, cleats and fastenings, secure against such wind, weather, and acts of persons or things as might reasonably be anticipated, and in preventing them from becoming dangerous to pedestrians or other persons using the streets, as a prudent and reasonable man, mindful of his duties and desirous of discharging them, would use under the circumstances, which care and skill should be measured by the rule laid down in the case last cited.   For a failure to discharge this duty it is responsible to such parties as may be injured by its non-performance.   *Ward* v. *Atlantic, etc., Telegraph Co.*, 71 N. Y. 81.   Its liability for damages is dependent only on such condition.

According to the foregoing test, are the instructions objected to by appellant correct?

The second instruction makes the dangerous character of the wires and their fastenings the sole test of liability.   The same defect exists in the instructions numbered fourth, sixth and eighth.   In the sixth the court told the jury that if they "believed from the evidence that the defendant fastened its wires upon a pier over the street in such a manner as to loosen the brick, or cause them to be loosened by the natural action of the wind or rain, and that the brick were so loosened and liable to fall upon any one in the street below, and that said street was a public highway, and that such fastenings rendered travel on the highway less secure or more hazardous, then such fastenings would be negligence on the part of defendant.   And if you further

find that plaintiff was injured by a brick or timber falling from said pier, caused by the manner of fastening the same by defendant, you must find for the plaintiff, even though you may find that persons upon the roof of the building, engaged in extinguishing a fire or protecting the building from fire, may have contributed in precipitating the brick to the pavement below, provided you further find that such actions of persons on said roof might reasonably have been anticipated." The fourth and eighth, taken as one instruction, are substantially a repetition of the sixth. According to all of them, it was the duty of the jury to return a verdict without regard to the care, skill and diligence exercised by appellant in suspending and fastening its wires, and in maintaining its structures or appliances in a safe condition. The instructions given at the instance of appellant upon the same subject do not explain, but contradict, them; and the error in the instructions objected to remained uncorrected.

Instruction as to use of highway disapproved.

The instruction numbered "first," while it may not have been prejudicial, was not proper. The fact that a street is a highway, and the appellee had the right to be in it, did not relieve him of the duty to exercise care to avoid danger. If he was guilty of "conduct which a reasonable and prudent man would not have adopted under the circumstances, and this conduct contributed directly to his injury," he was not entitled to recover.

Admissibility of ordinance in evidence.

The ordinance passed by the city council of Little Rock did not impose upon appellant any additional duty, so far as it affected the issues in this case, did not aid the jury, was unnecessary, and should not have been read as evidence.

As to the other instructions given or refused by the court, it is sufficient to say, instructions as to damages should be confined to the evidence, and that the rule as to the duty of the jury, when the evidence shows that

one of two theories is true, according to one of which the plaintiff is not entitled to recover, and one of them is as probable as the other, is correctly laid down in *Railway Company* v. *Henderson*, 57 Ark. 402.

For the errors contained in the instructions objected to and numbered "second," "fourth," "sixth," and "eighth," the judgment of the circuit court is reversed, and the cause is remanded for a new trial.