THE NORTH LITTLE ROCK TRANSPORTATION
CO., INC. ET AL *v.* JOE P. FINKBEINER ET AL

5-4270                                    420 S. W. 2d 874

Opinion delivered November 27, 1967

Rose, Meek, House, Barron, Nash & Williamson and Louis Rosteck, for appellants.

Wright, Lindsey & Jennings, for appellees.

HENRY WOODS, Special Justice. This is a suit for property damage and personal injuries filed by appellants in circuit court. Litigation resulted when a cab owned by appellant North Little Rock Transportation Co., Inc. and occupied by appellant Baxter skidded on water flowing across a street from a lawn sprinkling system owned by appellees Mr. and Mrs. Joe P. Finkbeiner. At the close of all testimony, the trial judge directed a verdict for the appellees, and the sole issue is the correctness of the ruling. Two basic questions must be answered. First, were the Finkbeiners negligent? Secondly, even if they were not negligent, can liability be imposed under the doctrine of *Rylands* v. *Fletcher*, L.R. 3 H.L. 330, *i. e.*, under a theory of absolute or strict liability?

There is no material dispute as to the facts. Mr. and Mrs. Joe Finkbeiner, the appellees, own a home on the south side of Cantrell Road near the crest of what is known as Cantrell Hill in western Little Rock. On June 10, 1966 Mrs. Finkbeiner decided to activate their lawn sprinkling system for the first time since the winter months. To accomplish this, a city water company employee, using a special tool, must first open a cutoff valve located in a steel box near the road. After this valve is opened, the sprinkling system is then controlled manually by two toggle switches on the porch of the Finkbeiner home, each of which controls the sprinkler heads on one-half of the lawn. In response to a call by Mrs. Finkbeiner, a water department employee opened main cutoff valve sometime between 9:00 and 9:30 A.M. The sprinkler heads on one side of the lawn immediately began operating, and Mrs. Finkbeiner was so advised by the water company employee. She told him to

leave it on, that she would turn on the other side, and cut both off when she had finished watering the yard. There is no evidence in the record that either Mrs. Finkbeiner or the water company employee then realized that something was amiss with one of the toggle switches.

At approximately 11:00 A.M. Mrs. Finkbeiner attempted to cut off the sprinkler system, but one of the switches would not operate. Mrs. Finkbeiner immediately called her husband at his meat packing plant, and the plant's chief maintenance engineer was sent to repair it. At the same time she called the city water department and asked them to send someone to cut off the main valve. Mr. Finkbeiner's maintenance engineer arrived in a few minutes and was attempting to repair the switch at the time of the accident hereinafter described.

Water from the sprinkling system flowed into Cantrell Road and down the curb on the south side for about a block until it reached a point where the road cruves from its generally eastward direction. At this point the water continued eastward, crossing the road in rather large quantities. At approximately 11:35 A.M. a westbound cab owned by appellant North Little Rock Transportation Co., Inc. and occupied by appellant Baxter skidded on the wet road surface and crashed into a telephone pole damaging the cab and injuring Mr. Baxter.

Mrs. Finkbeiner denied any knowledge that the water on this occasion had been discharged in sufficient quantity to flow across Cantrell Road, and both appellees denied knowledge of such flow on any previous occasion. However, the sprinkler system had never been permitted to operate for this length of time. The Finkbeiners testified that in six years of occupancy the sprinkling system had been checked on several occasions and the switches had never before given trouble.

The rule with regard to negligence in this type of fact situation is given in the Restatement, Second, Torts

§ 368 as follows:

> "A possessor of land who *creates* or *permits to remain thereon* . . . an artificial condition so near an existing highway that *he realizes or should realize* that it involves an unreasonable risk to others accidentally brought into contact with such condition while travelling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who (a) are travelling on the highway. . ."

Here the condition was "created" by the defective switch. Did the Finkbeiners fail to use ordinary care with respect to its condition? This question must be answered in the negative. The sprinkler system had been checked on several prior occasions. This switch had never given trouble before. The cases, including one in Arkansas, uniformly refuse to predicate negligence on this basis alone. *Haizlip* v. *Rosenberg*, 63 Ark. 430, 39 S. W. 60 involved a defective ballcock in a water closet. "The appellant did not know, and had no actual notice that the water fixtures were in bad repair before or at the time of the overflow." *Id.* at 431, 39 S. W. at 61. As was said in a leading English case almost identical in facts to *Haizlip*, there was "no reason to suspect the valve had given way or was in any danger of giving way or that anything was wrong with the closet, and I see no negligence in not guarding against a danger which there is no reason to anticipate." *Ross* v. *Fedden*, 7 L.R. 661, 662 (Q.B. 1872). See also *Blake* v. *Land and House Property Corp.*, 3 T.L.R. 667 (Q.B. 1887) for similar facts and result; *Armstrong* v. *Milgrim*, 172 N.Y.S. 454 (actual or constructive notice to landowner necessary to charge landowner with negligence in leakage of pipe from defective valve); *Uhl Bros.* v. *Hull*, 130 Wash. 90, 226 P. 723 (no negligence where leakage from concealed pipe, which could not be discovered except with great difficulty); *Reedy* v. *St. Louis Brewery Ass'n* 161 Mo. 523, 61 S. W. 859, 53 L.R.A. 805 (no

negligence on part of brewery whose pipe burst and discharged water across sidewalk; water froze and caused plaintiff to fall).

Even though a landowner might not be negligent in causing a discharge of water from his premises onto adjoining property or into an abutting highway, ordinary care might well require that immediate steps be taken to correct the condition, once it is discovered. In the words of the above-quoted section of the Restatement, there may be a failure of ordinary care if the landowner "permits it to remain." Yet in this respect the actions of the Finkbeiners were exemplary. Upon discovering that the switch was broken, Mrs. Finkbeiner immediately called her husband, who dispatched his chief maintenance man to make repairs. She also called the water company and asked them to send a man to cut off the main valve.

Appellants, however, urge that a jury question was made on the failure of the Finkbeiners to warn them that the water was flowing across Cantrell Road and creating a hazardous condition to traffic. Such a duty on their part could only arise if they knew or *should have known* this fact. There is no evidence in this record that they had actual knowledge, so this allegation must necessarily be based on the contention that they *should have known* the course and possible result of the water's flow. We cannot sustain this contention. The point where the water crossed Cantrell Road was a block from the home. On previous occasions when their sprinkler system was used, the water flowed along the curb on the south side of Cantrell Road into a drain past the point of the accident. We do not think it would be reasonable to charge them with constructive knowledge not only that the water would cross the road, but that a car travelling up the hill would skid on the wet surface. Nor do we consider that ordinary care would dictate that Mrs. Finkbeiner should go more than a block from her home and flag traffic proceeding up Cantrell Hill.

To control traffic of the speed and density found at this location would certainly have been beyond the competence of a housewife. Mr. Finkbeiner is an executive in a meat packing firm located in the extreme eastern part of Little Rock at a considerable distance from his home. The accident happened about thirty minutes after his wife notified him telephonically of her difficulties with the switch. Even if he had realized on the basis of a phone call that a dangerous condition was being created for traffic on Cantrell Road, we do not see how he personally could have taken steps to warn motorists, in view of the time element. He did immediately dispatch his chief maintenance man to repair the switch, and Mr. Finkbeiner was at the scene within an hour after his wife's call.

Appellants place principal reliance on the Texas case of *Skelly Oil Co. v. Johnson,* 151 S. W. 2d 863, which bears some superficial resemblance to the case at bar. Water from Skelly's cooling tower was blown by the wind onto a nearby road, causing a slippery surface on which plaintiff's car skiddel. The clear distinction between *Skelly* and the case at bar appears in the court's finding that "when wind was from the west, water would be blown from the cooling towers onto the road east of the towers and *for a number of years wet places had been created. . ."* (Emphasis added.) The distinction is made more evident by the Texas court's principal authority, *Stephens, Adm'r v. Deickman,* 158 Ky. 337, 164 S. W. 931, a case wherein a downspout discharged water across a sidewalk, ice formed, and plaintiff was injured in a fall. The court in that case said:

"[I]n case such an obstructon or nuisance should arise suddenly or unexpectedly, it is the landlord's duty to remove the obstruction or nuisance as soon as he has knowledge of its existence, or could have had such knowledge by the exercise of ordinary care. In the case at bar the ice had remained upon the sidewalk for more than two weeks before the

accident, and *to the knowledge* of the appellee."
(Emphasis added.) 164 S. W. at 934-35.

*Skelton* v. *Thompson,* 3 Ont. Rep. 11, involved the
same fact situation, except that the ice had formed two
or three hours before the accident. In conformity with
the rule expressed in the above Kentucky case, judg-
ment was for the defendant because there was in find-
ing that the abutting owner *either knew or should have
known* of the slippery condition which caused the plain-
tiff to fall. A similar view was expressed in *Lansing* v.
*John Strange Paper Co.,* 227 Wis. 439, 278 N. W. 857.
The defendant's plant emitted vapor from exhausts in
proximity to a bridge, causing ice to form on the bridge.
Plaintiff sustained injuries when his car skidded on the
ice. The court pointed out that there was a complete
absence of any proof that ice had ever formed there-
tofore upon the bridge as a result of vapor emitted
from defendant's plant. In denying liability it was said
that "to sustain liability it is not enough to show that
the defendant permitted a dangerous condition to exist.
It must also be shown that it was negligently permitted
to exist. If risks of harm cannot be foreseen by a rea-
sonably prudent and intelligent man, the risk is not un-
reasonable, hence there is no negligence, consequently,
no liability." 278 N. W. at 859.

The question therefore shades into what is a patent
defect in appellants' entire negligence case—the absence
of foreseeability. Foreseeability is a necessary ingredi-
ent of actionable negligence in Arkansas. *Collier* v.
*Citizens Coach Co.,* 231 Ark. 489, 330 S. W. 2d 74. As
Justice Leflar wrote in *Hill* v. *Wilson,* 216 Ark. 179, 183,
224 S. W. 2d 797, 800: "There is no such thing as
'negligence in the air.' Conduct without relation to oth-
ers cannot be negligent; it becomes negligent only as it
gives rise to an appreciable risk of injury to others."
See also the celebrated opinion by Judge Cardozo in
*Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339, 162
N. E. 99. The same concept is expressed in the above-

cited Restatement, Second, Torts, § 368 with its requirement that the possessor of lands "realizes or should realize (that the condition) involves an unreasonable risk to others accidentally brought into contact with such condition. . ."

It follows from what has been said that appellants may not maintain an action against the Finkbeiners based upon negligence. This brings us to an examination of the other possible basis of liability. In the 1868 English case of *Rylands* v. *Fletcher,* L.R. 1 Ex. 265, aff'd L.R. 3 H.L. 330, the defendant constructed a reservoir on the site of an abandoned mine. Water seeped into the mine and thence into shafts of plaintiff's mine on adjoining property. No negligence was found on the part of defendant, but liability was nevertheless imposed in the Court of Exchequer under a rule formulated in the following terms:

> "We think the true rule of law is that the person who for his own purposes brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it at his peril and if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape." *Id.* at 279.

In the House of Lords, Lord Cairns modified the rule somewhat by pointing out that the defendant would not be liable if the activity were a natural use of the land.

If the rule expressed in the Court of Exchequer were applied broadly and literally in the case at bar, a strong argument might be made for imposing liability on the Finkbeiners. Indeed, in a number of early English cases, the doctrine of *Rylands* v. *Fletcher* was used to impose liability in factual situations somewhat similar to that existing in the case at bar. See *Charing Cross Electric Supply Co.* v. *Hydraulic Power Co.,* 3 K. B. 722, 83 L.J.K.B. 1352 (water in high pressure

mains under street flowed out from breaks not caused by negligence of water company and damaged plaintiff's cables); *Snow* v. *Whitehead,* 27 Ch. Div. 588 (water collected in cellar of defendant's house and then found its way into cellar of adjoining house. "Anyone who collects upon his own land water, or anything else, which would not in the natural condition of the land be collected there, ought to keep it in at his peril, and that if it escapes, he is liable for the consequences." *Id.* at 591); *Ballard* v. *Tomlinson,* 29 Ch. Div. 115 (defendant dumped sewage and waste on property which polluted his well and by percolation polluted plaintiff's well on adjoining property).

The principle was not long in finding its way into American courts, the earliest decision being *Ball* v. *Nye,* 99 Mass. 582, where filthy water from defendant's land percolated into plaintiff's well. Another early Massachusetts case, *Shipely* v. *Fifty Associates,* 101 Mass. 251, involved its application to facts somewhat similar to those in the case at bar in that snow and ice slid from defendant's roof onto sidewalk causing plaintiff to fall. The same basis of liability was applied on identical facts in *Hannem* v. *Pence,* 40 Minn. 127, 41 N. W. 557. There are many other American cases where the rule in *Rylands* v. *Fletcher, supra* was used to impose absolute liabilty for the escape of water from defendants' property. See for instance, *Weaver Mercantile* v. *Thurmond,* 68 S. Va. 530, 70 S. E. 126 (defendant's water storage tank burst and damaged plaintiff. "Therefore, if a man brings water upon his premises by artificial means, and collects and keeps it there, he is bound at his peril to see that the water does not escape. . ." 70 S. E. at 127); *Bridgman-Russell Co.* v. *Duluth,* 158 Minn. 509, 197 N. W. 971 (water main broke and damaged plaintiff's property); *Defiance Water Co.* v. *Olinger,* 54 Ohio St. 532, 44 N. E. 238 (standpipe burst and escaping water injured plaintiff in nearby house); *Baltimore Breweries Co.* v. *Ranstead,* 78 Md. 501, 28 A. 273 (water escaped from defendant's storage tank and flooded plaintiff); *Wilson* v. *City of New Bedford,* 108 Mass. 261

(water seeped from water reservoir to adjoining land-owner's cellar); *Healey* v. *Citizens Gas & Elec. Co.*, 199 Iowa 82, 201 N. W. 118 (water percolated from defendant's dam and reservoir and flooded plaintiff's land); *Kall* v. *Carruthers*, 59 Cal. App. 555, 211 P. 43 (water from rice grower's land percolated and damaged land of adjoining owner); *Norfolk & W. Ry. Co.* v. *Amicon Fruit Co.*, (4th Cir.) 269 F. 559 (leakage from defendant's pipeline caused water to flow into plaintiff's cellar and injure goods).

After the first rather broad applications of the principle, the English courts began to emphasize its initial limitations, expressed by Lord Cairns in the House of Lords, that the doctrine applied only to a "non-natural" use of the land. A few years later English and Commonwealth cases are illustrative. In *Rickards* v. *Lothian*, A. C. 263 [1913,] 82 P.J.P.V. 42, there was an overflow of a lavatory on the top floor and damage to stock in trade on the lower floor, caused by the malicious act of a third person. In denying liability urged under the rule of *Rylands* v. *Fletcher*, Lord Moulton pointed out that "it is not every use to which land is put that brings into play that principle. It must be some special use, bringing with it increased danger to others, and must not be the ordinary use of the land." *Id.* at 280. See also *Torette House* v. *Berkman*, 62 C.L.R. 637 (Australia).

One of the best illustrations of the more recent attitude of the English courts is *Peters* v. *Prince of Wales Theatre*, 1 *K. B.* 73 [1943], a case involving a sprinkler system, albeit not the same type as involved in the case at bar, but one installed in a theatre to prevent fires. The system was released by a freeze, and water damaged plaintiff's stock and trade on adjoining premises. The trial judge held the defendant liable under the authority of *Rylands* v. *Fletcher*, refusing to accept the analogy of the escape of water brought on premises merely for such domestic purposes as water closets, lavatories, and baths. "It is a system in which there

is potential danger of the escape of an enormous quantity of water.''

The Court of King's Bench reversed and in the course of its opinion stated:

> "In the present case, we are concerned with a building, the greater part of which was, at the time of the damage, used as a theatre, where not only must special precautions against fire be taken, but these sprinklers are by the local authority required to be fitted. Having regard therefore to the nature of the building, the installation would appear to be ordinary and usual. . ." *Id.* 76.

The American decisions have been sharply divided in their acceptance of the rule of *Rylands* v. *Fletcher.* See the tabulation of the various jurisdictions in Prosser, Law of Torts, 3rd Ed., 523 *et seq.* But even those jurisdictions which apply it now accept the limitation of ''non-natural use'', emphasized in the above English cases. Two cases are good illustrations in the context of the present fact situation. In *MrCord Rubber Co.* v. *St. Joseph Water Co.*, 181 Mo. 678, 81 S. W. 189, a water pipe on defendant's premises broke during a freeze and damaged plaintiff's goods. The doctrine of *Rylands* v. *Fletcher* was held inapplicable to these facts:

> "There is a wide difference between a great volume of water collected in a reservoir in dangerous proximity to the premises of another, and water brought into a house through pipes, in the manner usual in all cities, for the ordinary use of the occupants of the house. Whilst water so brought into a house cannot literally be said to have come in in the course of what might be called, in the language above quoted of the Lord Chancellor, 'natural user' of the premises, yet it is brought in by the method universally in use in cities, and is not to be treated as an unnatural gathering of a dangerous agent. The law applicable to the caging of ferocious ani-

mals is not applicable to water brought into a house by the pipes in the usual manner." 81 S. W. at 193.

The trial court in *Shanander* v. *Western Loan & Bldg. Co.,* 103 Cal. App. 2d 507, 229 P. 2d 864, 26 A.L.R. 1039, applied the doctrine of *Rylands* v. *Fletcher* to a case in which a pipe in an upper floor apartment burst and damaged premises below. In reversing, the court quoted 32 Am. Jur. 626-67 as follows: "The rule . . . is not applicable to the act of a landlord in providing his building with artificial means for supplying it with water. Such introduction of water is an ordinary and natural use." 229 P. 2d at 866. It is interesting to note that one of the cases cited in this opinion is the Arkansas decision of *Haizlip* v. *Rosenberg, supra.*

This brings us to a consideration of the rule of *Rylands* v. *Fletcher* in Arkansas. Its history is interesting. See Sharp, *Absolute Liability in Arkansas,* 8 Ark. L. Rev. 83. After express repudiation in the early case of *Southwestern Tel. and Tel. Co.* v. *Beatty,* 63 Ark. 65, 37 S. W. 570, the rule was again considered in a 1922 case, *Constantin Refining Co.* v. *Martin,* 155 Ark. 193, 244 S. W. 37, which is in some respects similar to the case at bar, but presents a far stronger factual situation for the application of absolute liability. Defendant drilled and capped a gas well. Gas passed through a fissure in the earth and escaped through a crater 950 feet away on adjoining property, attracting crowds to watch the escaping gas throw mud and water high into the air. Plaintiff's decedent and four other bystanders were killed in an explosion apparently caused by someone's striking a match to light a cigar. In reversing and dismissing a judgment for the plaintiff, the court found no negligence and then refused to apply *Rylands* v. *Fletcher.* "The doctrine of that case has not been generally accepted in this country, and we think that in its full scope it is directly in conflict with the decisions of this court." *Id.* at 200, 244 S. W. at 39.

In spite of the above language, this court along with many others has applied the doctrine of strict li-

ability by calling certain conduct a nuisance. *Sharp, op. cit. supra,* 89. "The reports are filled with cases where this doctrine has been applied, and it may be confidently asserted that no authority can be produced, holding that negligence is essential to establish a cause of action for injuries of such character," *Czarnecki* v. *Bolen-Darnell Coal Co..,* 91 Ark. 58, 61, 120 S. W. 376, 377. Dean Prosser points out that "there is in fact probably no case applying *Rylands* v. *Fletcher* which is not duplicated in all essential respects by some American decision which proceeds on the theory of nuisance and it is quite evident that under that name the principle is in reality universally accepted." Prosser, Law of Torts, 3rd Ed. 529.

The somewhat confused status of *Rylands* v. *Fletcher* in Arkansas was clarified in 1949 when this court decided *Chapman Chemical Co.* v. *Taylor,* 215 Ark. 630, 222 S. W. 2d 820 and unequivocally adopted the position of the 1939 Restatement of Torts §§ 519, 520. These sections are nothing more than a codification of the principle of *Rylands* v. *Fletcher,* with a limitation to an "ultrahazardous activity" of the defendant, defined as one which "necessarily involved a risk of serious harm to the person, land, or chattels of others which cannot be eliminated by the exercise of utmost care" and "is not of common usage." See full discussion of *Chapman* case in Harper & James, Law of Torts (1956) § 28.27 pp. 1592-93 and by Dean Prosser in his 1955 address to the Arkansas Bar Association on "Recent Developments in Law of Negligence," 9 Ark. L. Rev. 81, 85.

Certain conclusions necessarily follow from the authorities cited above. Prior to 1949 the principle of *Rylands* v. *Fletcher* had been expressly repudiated in Arkansas, even though it may have been applied under the guise of calling certain conduct a nuisance. However, application of the doctrine, completely undiluted, would not help these appellants, because it was never applied to the escape of water from a domestic household water

system. By no stretch of the imagination could the use of a lawn sprinkler be called a "non-natural use" of the land, so as to meet the test applied by Lord Cairns, in modifying *Rylands* v. *Fletcher* in the House of Lords. *A fortiori*, appellants cannot meet the requirements of the 1939 Restatement, Torts §§ 519, 520. Operating a lawn sprinkling system is not an "ultrahazardous activity."

Since appellants have not under the testimony established either negligence on the part of defendants or a case for the application of the rule of absolute liability, the judgment must be affirmed.

Affirmed.

GEORGE ROSE SMITH, J., disqualified.