CONSTANTIN REFINING COMPANY v. MARTIN.

Opinion delivered October 16, 1922.

1. MINES AND MINERALS—EXPLOSION OF GAS—NEGLIGENCE.—Where defendant owned a producing well and was not guilty of negligence in capping it or in permitting gas to escape therefrom, but the capping produced a crater on another's land over which defendant had no control, and plaintiff's intestate, while looking at the escaping gas, was killed when the escaping gas was ignited by another spectator, defendant was not liable.

2. NEGLIGENCE—ATTRACTIVE NUISANCE DOCTRINE.—Where defendant drilling for oil in capping a gas well produced a crater on another's land, and a child looking on was killed by the gas becoming ignited, since the injury did not result from a failure to warn spectators, and defendant had no control over the premises, the doctrine of attractive nuisance was not applicable.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

*Breckenridge, Bostick & Daniel,* and *Moore, Smith, Moore & Trieber,* for appellant.

The attractive nuisance doctrine is not applicable, since the deceased was past fourteen years of age, unusually bright, and accompanied by her father and uncle and aunt, and the infancy of the trespasser raised no

duty towards her where otherwise none would exist. The bare fact of production of oil or gas by the defendant on its leased lands raised no presumption of negligence in its operations. 153 Pa. 366; 26 Atl. 644; 20 L. R. A. 642. The premises where the accident occurred were not under the control of defendant. To reach the place one had to cross the railroad track, which in itself is a constant warning of danger. 97 Ark. 438. Defendant was not negligent in capping the well; it was required to do so by law. C. & M. Dig., sec. 7306. In order to connect defendant with the creation of the crater, the facts would have to be supplied by conjecture and speculation, and such a verdict could not stand. 117 Ark. 655. There was nothing, according to usual experiences, by which defendant should have apprehended the result. The test of responsibility is whether such result as did happen was probable or likely to occur in the usual experiences of mankind. 171 Mass. 536. There are no cases directly in point where liability is sought to be imposed for an accident on property not controlled by a defendant, and it is only by analogy that we may test the liability in this case. The courts have uniformly held that where one creates some defective condition on lands, and afterwards transfers possession to another, he is not responsible for injury occurring after he has passed control. 96 Ark. 442. For comparison see the following cases. 114 Ark. 218; 150 Ia. 403; 32 L. R. A. (N. S.) 743; 63 Ark. 65; 290 Ill. 395; 175 Mass. 510; 65 Kan. 436; 69 Ark. 489; 90 Ark. 278; 48 Ark. 491; 104 Ark. 236; 114 Ark. 218; 227 S. W. 166; 103 Ark. 226. Defendant's instruction No. 16, showing distinction between active and passive negligence as applied to implied licensees, should have been given without the modification. 74 Fed. 350.

*Mehaffy, Donham & Mehaffy,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellees.

The attractive nuisance doctrine applies. 124 Ark. 1; 100 Ark. 76. Any negligence that might be imputed

to the father could not be so imputed to the appellee. 77 Ark. 398; 59 Ark. 180. It is no defense that the escape of the dangerous agency from the premises of defendant was not due to its personal negligence. L. R. 1 Exch. 265; 1 Eng. Rul. Cas. 235; 116 Ark. 433; 141 Ark. 32; see note to 15 L. R. A. (N. S.) 535. Appellant is in no attitude to urge the defense of liability to a trespasser, for such defense is personal to the owner of the premises trespassed upon. 53 Ark. 381; 109 Atl. 653; 153 N. Y. S. 120; 92 S. E. 559; 29 Cyc. 443; 77 N. Y. S. 820; 70 N. E. 1052; 37 N. Y. 637, 97 Am. Dec. 761; 83 N. E. 477. The duty devolved on appellant to properly safeguard the dangerous place, even though situated on the property of another. 79 Ark. 490. Its negligence in not so doing was the proximate cause of the injury. 95 Ark. 297; 134 Ark. 1; 104 Ark. 59; 137 Ark. 217; 124 Ark. 599; 70 Pac. 635. Where the intervening cause concurs with the negligence of the wrongdoer, the first wrongdoer is liable and the second may also be. 31 L. R. A. (N. S.) 559; 49 Cal. 87.

McCULLOCH, C. J. This is an action to recover damages sustained on account of the death of a young girl, which was caused by an explosion or ignition of natural gas in the oil fields near El Dorado. The plaintiff sued as administrator for the benefit of the estate of the decedent, and for the benefit of the next of kin, and he also sued in his individual right as parent of the decedent, who was about fourteen years of age. The plaintiff recovered damages in the trial below, and the defendant appealed.

The defendant, Constantin Refining Company, was operating in the El Dorado oil field, and was engaged in drilling for oil on a tract of land on which it held a lease. A few weeks before the occurrence which caused the death of the girl, Mary Martin (which was on the afternoon of Sunday, June 13, 1920), the defendant brought in a producing well, which, after a few days, it

succeeded in capping so as to prevent the escape of oil or gas from the mouth of the well.

There is no evidence in the case of any escape of gas in noticeable quantities from the mouth of the well. However, a few days after the well was capped it was found that there was an escape of gas through fissures in the earth to the surface, and at a point 950 feet distant from the well there was a crater formed in the bed of a small stream of water. There was no evidence adduced directly showing that the escape of gas to the surface through fissures was caused by capping defendant's well, but for the purpose of the present discussion we will assume that the proved circumstances warranted that inference and that the crater was caused in that way. The crater was on another tract of land than that on which the well was located—a tract in which the defendant had no interest and over which it had no right to exercise control. It was on a tract of fenced and cultivated land known as the Parnell field, which was owned by certain persons at El Dorado named Parnell, and on which another oil company held a lease for the development of oil and gas.

A railroad track was between defendant's tract of land and the Parnell tract, and the track was on a dump, or embankment, twelve feet high. The crater was distant from any public road and on the line of the railroad right-of-way and the Parnell tract, and when it opened it blew up the fence which marked the line of the right-of-way. It was about twenty feet in diameter, and was full of muddy water, which was forced upward by eruption of the escaping gas, and mud and water were thrown up to a height of about fifteen feet. This caused a loud roar, which could be heard at considerable distance, and there was a noticeably strong smell of gas around it.

This was such an unusual situation that it attracted a great deal of attention, the scene being only a few miles distant from the city of El Dorado. There was a large number of visitors to the scene for the purpose of witnessing it, and on the day on which the explosion occurred,

which was on Sunday, the scene was visited by large crowds. Visitors usually parked their cars and other vehicles in the road or lane a short distance from the crater and walked across defendant's land until the railroad was reached, and then they walked down the railroad to a trestle opposite the crater.

Defendant erected on its own premises warning signs indicating danger and directing that there be no smoking. It does not appear that these signs were erected after the crater was blown in, or that they had reference to the danger of visiting the crater, but they were probably erected prior to the bringing in of the well, as warnings of danger to those visiting the fields.

On the Sunday afternoon in question, Mary Martin, in company with her parents and several other relatives, came to the scene of this crater to witness the remarkable phenomenon, and the party approached in the usual way indicated above. Some of the Martin family remained standing on the railroad track, but Mary, in company with her uncle and aunt, walked out toward the crater and was standing between it and the railroad trestle when the explosion occurred. The gas in the air was ignited and Mary Martin was severely burned, and died a short time thereafter. There were five persons, in all, who died as a result of the explosion.

The evidence shows—at least the only account given of the cause of the explosion—that the ignition of the gas was caused by a young man named Hayes striking a match with which he was lighting a cigar. The witnesses say that when he applied the match to the cigar in his mouth a flash of fire was seen from his mouth to the crater.

Liability is sought to be imposed on the defendant on the ground that it caused a dangerous agency to escape, and failed to exercise care to prevent injury to others.

The court submitted the case to the jury on instructions which stated the law of the case to be that if the defendant "negligently caused or permitted a large pool

of oil or gas * * * * to accumulate and spread on adjacent property, and negligently failed to guard and protect persons who they knew were constantly congregating in the vicinity of said pool of oil or gas," it would be liable for injury to other persons while in the exercise of ordinary care for their own safety.

We deem it unnecessary, in view of the conclusion which we have reached, to discuss the instructions of the court, but, assuming the existence of the facts hereinbefore recited, and drawing from them the conclusion most favorable to plaintiff's right of action, we proceed to determine whether or not, in any view, there are facts from which liability can be imposed upon the defendant for the injury which resulted from the explosion.

In the first place, we are unable to discover any act of negligence on the part of the defendant. There was none in bringing in the well, for in doing so the defendant was in the pursuit of a lawful business, and it conducted its operations in accordance with the usual methods.

There was no negligence in capping the well, for defendant had the right to do so in order to preserve the product of the well, and the law compelled it to do so, when necessary, in order to prevent the escape of natural gas. Crawford & Moses' Digest, § 7306.

There was no negligence in the formation of the crater, for that resulted by reason of the natural pressure of oil and gas through fissures in the earth.

There was no negligence on the part of the defendant in failing to erect barriers around the crater to prevent the approach of visitors, for the crater was not on premises in which the defendant was interested or over which it had any control. It was not chargeable with neglect in failing to guard the premises of other persons, nor was it responsible for injury resulting from the omission of others to guard the crater, unless it was guilty of negligence in permitting the escape of the gas.

As we have already seen, there was neither negligence in causing the crater nor in permitting gas to escape from the earth's surface at the mouth of the well.

It must also be said with respect to the charge of negligence in failing to give warning of the danger, that such warning was unnecessary and had no relation to the injury of plaintiff's intestate, for the reason that the danger was well known, and all who visited the place came with full knowledge of the situation and for the sole purpose of witnessing the extraordinary scene.

The principle upon which liability may be imposed on account of the maintenance of an attractive nuisance —known as the doctrine of the "turn-table cases"—may be disposed of with but little discussion, for it is obviously inapplicable to the facts of this case. This is true because, as we have already seen, the alleged nuisance, if such it may be considered, was not maintained on the defendant's own premises, or at a place over which it had the right to exercise any control. It is inapplicable for still another reason, that the failure to give warning of danger did not cause plaintiff's intestate and her associates to expose themselves to the danger.

Neither can liability be predicated upon the doctrine of concurring negligence, for the reason that, since there was no negligence on the part of the defendant, the act of Hayes in striking the match which ignited the gas was an intervening rather than a concurring cause of the injury.

Liability of the defendant is asserted on account of the use by it—a legitimate use without negligence—of a dangerous substance, which, by being ignited, caused the injury. In support of this contention, learned counsel for the plaintiff invoke the rule announced by the English court in the case of *Fletcher* v. *Rylands*, L. R. 1 Exch. 265, 1 Eng. Rul. Cas. 235. The facts of the case just cited were entirely different from the present case, in that the injury resulted from the act of the defendant in constructing on its own land a reservoir for impound-

ing water by artificial means, and the court held that the defendant was responsible for damages to an adjoining mine on account of the escape of the water. The doctrine of that case has not been generally accepted in this country, and we think that in its full scope it is directly in conflict with the decisions of this court, for we have held that liability is not incurred by the legitimate use of a dangerous substance unless there is negligence, either in its use or in failing to guard against injury. *S. W. Tel. & Telephone Co.* v. *Beatty,* 63 Ark. 65; *S. W. Tel. & Telephone Co.* v. *Bruce,* 89 Ark. 581; *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 576; *St. L. & S. F. R. Co.* v. *Williams,* 98 Ark. 72.

Decisions of this court (*Holt* v. *Leslie,* 116 Ark. 433, and *Field* v. *Viraldo,* 141 Ark. 32) declaring liability on account of permitting vicious animals to run at large, do not, as contended by counsel for plaintiff, constitute a recognition or adoption of the rule announced in *Fletcher* v. *Rylands, supra.* We think, though, the cases have no application to the principle upon which liability or nonliability under the present state of facts may exist.

The facts in this case are unusual, and therefore we find no case similar to it in the books, but in the consideration of settled principles of law which are applicable in determining the question of liability upon these facts, we find no principle which would justify the imposition of liability on the defendant.

That being true, the court erred in submitting the case to the jury and in failing to set aside the verdict of the jury.

The case being fully developed, no useful purpose would be served in sending it back for a new trial, so the judgment is reversed, and judgment will be rendered here dismissing the action.

HART, J., (dissenting). Judge HUMPHREYS and myself are of the opinion that the jury would have been justified in finding that the Constantin Refining Company was guilty of negligence in allowing gas to escape

from its land through the fissures in the earth, and that this negligence, concurring with the negligence of Hayes in lighting a match near the mouth of the crater, caused the explosion which resulted in the death of Mary Martin.

It is true that the Constantin Refining Company had a right to drill for oil on the land it had leased; but it was its duty to use every reasonable precaution suggested by the experience and the known dangers of the subject to guard against the escape of gas. The jury might have found that, if the company had used due diligence' in drilling its well, it might have fitted the casings together so that gas could not have escaped. The company knew, or at least is chargeable with knowledge, that in drilling its well gas was likely to rise and escape through apertures in the earth if the well casings were not fastened together tightly.

In other words, the jury might have found that by reason of defects in the materials used, or the manner of construction of the casings in the ,oil well, that gas escaped therefrom through crevices in the earth to the adjoining land.

Defendant was charged with the knowledge that the escaping gas was a subtle and highly explosive agency. The gas field in question was a new one, and the notoriety attending the escaping gas drew a crowd of sightseers. The concurrence of the presence of gas at the opening in the earth and the lighting of the match by Hayes caused the explosion. In such cases the injured party has a cause of action against either of the wrongdoers, or both, at his election.