SINCLAIR REFINING COMPANY *v.* GRAY.

4-3913

Opinion delivered June 24, 1935.

*Malcolm W. Gannaway,* for appellant.

*Edward Gordon,* for appellees.

MEHAFFY, J. This suit was begun in the Conway Circuit Court by Elmer Gray, Jr., by his guardian and next friend, Mrs. Princess C. Gray, and Mrs. Princess C. Gray against the appellant, Sinclair Refining Company, to recover damages for injury received by Elmer Gray,

Jr., four years old, caused by an explosion at the gasoline tank belonging to appellant. The appellant had leased from Prince Clergett certain land located on the north side of highway 64, west of Morrilton, Arkansas, and had placed on said land certain underground gasoline tanks and other equipment for the retailing of gasoline and servicing of automobiles. Prince Clergett was placed in charge as agent of appellant and operated the station using the tank and equipment until January 9, 1934, when the lease agreement and other agreements were canceled. The appellant however did not remove its tanks and equipment, but continued to use them through its agents. One of the agents of appellant was J. M. Merrick.

Merrick testified that he was appellant's agent at the time the appellee, Elmer Gray, Jr., was injured; that he sold the gasoline to Bill Russell. The witness also testified that he did not think the contract was actually canceled on January 9th because the cancellation agreement had to be sent to the office and forwarded back to Mr. Benbrook, and in his judgment it was later than the 9th before it could be sent for cancellation.

Frank Hawkins testified that he was a truck driver for Merrick, agent of the appellant, engaged in the delivery of gasoline and other oil products; that he delivered the gasoline to Russell, but at the time he delivered it he thought it was for Clergett.

Bill Russell testified that he was present when Frank Hawkins delivered the gasoline to Clergett's filling station; saw Hawkins open the lock on the tank; that he used the axle of a Ford car to pry it open; saw Hawkins put the gasoline in the tank and try to lock it, but Hawkins said the lock would not hold, and told witness that he would have to get another lock, and that he, Hawkins, would bring one next time he came.

After the gasoline had been delivered into the tank and the lock had been broken off, on January 12, 1934, Elmer Gray, Jr., while visiting his grandmother, who lived on the property leased by appellant where said tanks were located, was attracted to the fill pipe used to fill one of the underground tanks, and the child raised

the top or flap of the pipe and struck a match, causing an explosion which seriously injured the child.

Quite a number of witnesses testified, but we deem it unnecessary to set out their testimony because the undisputed facts show that the appellant owned and controlled the tank, pipe and equipment. The undisputed proof also shows that the lock had been broken from the pipe sometime in December. There is no dispute about the fact that the child was injured by the explosion, which would not have occurred but for the broken lock. There is no dispute about the extent of the child's injury.

There was a jury trial, and a verdict and judgment for appellee for $500. The case is here on appeal.

Appellant states that its theory is that the record shows conclusively that it had no control or right of control over the property where the boy was injured; that the gasoline which caused the injury did not belong to it, but belonged to Bill Russell; that it had no control over said gasoline; and that attractive nuisance doctrine has no application.

Appellant cites and relies on *Constantin Refining Company* v. *Martin,* 155 Ark. 193, 244 S. W. 37. In that case the Constantin Refining Company had brought in an oil well. There was no evidence of any escape of gas at the mouth of the well or anywhere near there, but a few days after the well was capped, it was found that there was an escape of gas through fissures in the earth to the surface, and at a point 950 feet distant from the well there was a crater formed in the bed of a small stream of water. There was no evidence that the escape of the gas was caused by the capping of defendant's well. The crater was on another tract of land than that on which the well was located, a tract in which the defendant had no interest, and over which it had no right to exercise control. It was on a tract of fenced and cultivated land, known as Parnell field. A railroad track was between defendant's tract of land and the Parnell tract, and the track was on a dump or embankment 12 feet high. The facts in that case are wholly different from the case at bar, and the court said in that case that it could discover no act of negligence. There was no negligence in bring-

ing in the well, and it conducted its operations in accordance with the usual methods. There was no negligence in capping the well; the defendant not only had a right to do that, but the law compelled it to do so. There was no negligence in the formation of the crater, for that resulted by reason of the natural pressure of oil and gas through the fissures in the earth. In that case Judge HART wrote a strong dissenting opinion holding that the Constantin Company was liable.

The next case referred to and relied on by appellant is *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Waggoner,* 112 Ark. 593, 166 S. W. 948, 52 L. R. A. (N. S.) 181. In that case the C. J. Lincoln Company had shipped over the line of railway an empty alcohol barrel. The barrel was received by the railroad company at Little Rock and shipped over its line to Ward. When it reached Ward, it was unloaded and set out at the end of the platform. There was nothing to call the agent's attention to the barrel as having explosives in it or as being dangerous. Waggoner had gone to the station to take the train to Judsonia, and his wife and two boys accompanied him to the station. While he was in the waiting room, the boys were playing on the station platform around the empty barrel. The barrel had a half-inch cork stopper in a hole in the end. The stopper was pulled out, and one of the boys stuck a match to it, and there was an explosion. Waggoner was ten years old, and the court said it could not say as a matter of law that he was guilty of contributory negligence. The court stated the rule to be as follows:

"Where the owner permits to remain unguarded on his premises, something dangerous which is attractive to children, and from which an injury may reasonably be anticipated, he may be liable."

In the instant case the undisputed proof shows that the owner of the tank and pipes permitted them to remain on the premises where they were located unguarded, and with the lock broken off so that the cap was not securely fastened.

Appellant next cites *Catlett* v. *Railway Company,* 57 Ark. 461, 21 S. W. 1062. There was no proof of negli-

gence at all, and no proof of any wrongful conduct on the part of the railway company. Catlett, a boy of eleven years of age, although he had been repeatedly warned not to do so, climbed on a moving train and was injured. The evidence shows that no one in charge of the train saw Catlett attempt to get on, or knew anything of the accident at the time. Of course the court held that there was no evidence of negligence.

In the instant case there is no dispute about the lock being broken, and the pipe being left in an unsafe condition.

It is next argued by the appellant that Hawkins was in the employ of Merrick and not in the employ of appellant. There is no dispute about Merrick being the agent of the appellant, and Hawkins was one of his truck drivers. But, if he had been a stranger, the appellant would be liable because, if it left the equipment, which was to be used to store and deliver gasoline in an unsafe condition, then any one could put gasoline in the pipes, and if a stranger did, and injury resulted, the appellant would be liable because it permitted its equipment to be in such condition that it could be used by any one, and the only purpose of its use was to store a dangerous agency.

The appellant was not an insurer, but it was bound to exercise such care and diligence as to avoid injury to the health and property of others by the escape of gas. The care and diligence should always vary according to the exigencies which require vigilance and attention. A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business which involves little or no risk. 28 C. J. 590-591. See *Nashville Lbr. Co.* v. *Busbee,* 100 Ark. 76, 139 S. W. 301.

In the instant case, if the evidence showed that the appellant had used reasonable care, it would not be liable, but whether it did or did not was a question for the jury, which was properly submitted to it under correct instructions.

In another case we said: "While it is true that the deceased could not have been killed by the escaping gas if he had not unscrewed the riser, still he had the right

to remove this apparently disconnected and dead gas pipe from his premises." *Pulaski Gas Light Company* v. *McClintock,* 97 Ark. 576, 134 S. W. 1189.

It is true in this case that the child would not have been injured if he had not struck the match, but, as he is too young to be guilty of contributory negligence, the striking of the match did not bar his recovery. Moreover, but for the negligence of appellant in leaving the lock broken and the pipe unguarded, the injury could not have occurred.

Appellant's specific objection to the instructions is that they made the test of liability the ownership and control of the gasoline tank, instead of making the test of liability the ownership or control of the gasoline which was in the tank. The gasoline would not have caused the injury, but for the negligence with reference to the pipe. The gasoline would have been perfectly harmless but for appellant's negligence. We think the trial court was correct in holding that the sole test was the ownership and control of the tank and equipment. The jury were fully and fairly instructed, and it would serve no useful purpose to discuss the instructions separately.

We find no error, and the judgment is affirmed.