374

SOUTH ARKANSAS OIL COMPANY *v.*
DAVID LIVINGSTON ET AL

5-5520                                      465 S. W. 2d 119

Opinion delivered April 5, 1971

*Wright, Lindsey & Jennings,* for appellant.

*William H. Drew* and *Brown, Compton, Prewett &
Dickens,* for appellees.

CONLEY BYRD, Justice. The jury found that both ap-
pellants South Arkansas Oil Company and Wheeling
Pipe Line, Inc., were guilty of negligence and that such
negligence on the part of each was a proximate cause of
the fire that damaged appellee David Livingston's build-
ing and contents. The jury apportioned the damages
75% to South Arkansas and 25% to Wheeling. For reversal
of the verdict in the amount of $66,494.08, appellant
South Arkansas contends there was no evidence to show
that it was guilty of negligence, or that any action on
its part was a proximate cause of any damages sustained
and that the trial court erred in refusing its requested
instruction (AMI 503) on intervening proximate cause.
Wheeling does not allege error in the judgment but as

a precaution to protect itself in event of reversal has filed a notice of appeal.

The record shows that South Arkansas is a gasoline marketing company and as such owns a service station in Lake Village adjacent to Livingston's Sport Center. The station is operated by Odell Rice on a commission basis. Mr. Wadsworth, South Arkansas's president did not know the exact gallonage of the station's storage tanks. His method of ordering gas was to check the reports sent in by Mr. Rice and to order gas approximately every two weeks according to the amount the reports showed had been sold. On those occasions when the pumps would run out of gas Mr. Wadsworth would cause gas to be shipped by the most convenient transport, either his own or that of Wheeling. On October 8, 1969, he says Mr. Rice reported that he was out of premium gas and on the same day he called Wheeling and ordered 5,500 gallons of premium and 3,000 gallons of regular.

In accordance with Mr. Wadsworth's order, Wheeling's driver T. B. Ray on October 9, 1969, delivered the 5,500 gallons of premium gas and the 3,000 gallons of regular. He testified that he pumped the 5,500 gallons of premium gas into the premium tank, disconnected therefrom and started pumping into the regular tank. Before he left to get a cup of coffee, Mr. Rice told him he had run the premium tank over. He estimates that ten or twelves minutes after he started pumping the regular he shut down to go get a cup of coffee Just as he ordered the cup of coffee, some one said they saw smoke and he ran to move the truck without drinking the coffee. According to him not more than fifteen or twenty minutes expired from the time he quit pumping the premium gas until the fire occurred.

David Livingston testified that there had been other occasions when spillage had occurred at the storage tanks and that he had discussed the matter with Mr. Wadsworth—[Wadsworth denies any such conversations.]

Odell Rice testified that the tanks had been over-

flowed before and that on the day in question he saw the gas overflowing from the premium tanks. When he first saw the fire it was in the area where the gasoline had been spilled.

George Carlton, the volunteer fire chief testified that the difficulty in extinguishing the fire was the amount of fuel in the gravel around the base of the tanks in back of the building. He says that in cleaning up the little spots of fire on the gravel, the gas would be re-ignited by the sparks caused by knocking one rock against another.

It seems to be conceded that the premium storage tank when completely empty would hold only 5,425 gallons of gasoline and that 93 gallons would still be left in the tank when the station pumps stopped pumping.

When the proof is considered in the light most favorable to the jury verdict, as we are required by law to do, we hold that there is substantial evidence both of negligence and proximate cause to support the verdict. As pointed out in *Gibson Oil Company* v. *Sherry*, 172 Ark. 947, 291 S. W. 66 (1927), gasoline is a highly dangerous substance. In *Tri County Gas & Appliance* v. *Charton*, 229 Ark. 989, 320 S. W. 2d 103 (1959), we stated the causal connection rule in this language:

> "In actions for damages on account of negligence plaintiff is bound to prove not only the negligence, but that it was the cause of the damage. This causal connection must be proved by evidence, as a fact, and not be left to mere speculation and conjecture. *The rule does not require, however, that there must be direct proof of the fact itself. This would often be impossible. It will be sufficient if the facts proved are of such a nature, and are so connected and related to each other that the conclusion therefrom may be fairly inferred.*"

South Arkansas's assertion that the trial court erred in not giving its requested instruction on intervening cause is not supported by the record. The record before

us is completely silent as to the proffer of such an instruction. In the absence of such showing, we are not in a position to hold that the trial court erred.

Affirmed.