**OZARK INDUSTRIES, INC., d/b/a Ozark Trout Farm, Plaintiff,**

v.

**STUBBS TRANSPORTS, INC., and Robert D. Hurrelbrink, Defendants.**

**No. F–71–C–43.**

United State District Court,
W. D. Arkansas,
Fayetteville Division.

Nov. 21, 1972.

Richard Hipp, of Niblock & Hipp, Fayetteville, Ark., for plaintiff.

H. Franklin Waters, of Crouch, Blair, Cypert & Waters, Springdale, Ark., for defendants.

## OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court the motion of defendant filed September 1, 1972, for summary judgment, together with the response of plaintiff filed November 10, 1972.

On November 24, 1971, plaintiff, Ozark Industries, Inc., (Ozark) filed its complaint against the defendants in which it was alleged that on November 5, 1971, the defendant Stubbs Transports, Inc. (Stubbs), through its employee, Robert D. Hurrelbrink, was operating a 1968 Crane carrier truck with tank trailer attached, containing gasoline, owned by Stubbs, within the City of Springdale, Arkansas, at or near the intersection of State Highway 68 and Dyer Avenue within said City; that the employee of Stubbs was operating the truck at a high, dangerous and reckless rate of speed and drove into the ditch adjacent to the said highway while attempting to pass on the right-hand side of a vehicle lawfully upon said highway; that the tank trailer overturned causing the gasoline to spill into the ditch adjacent to said highway; "that the said gasoline and fuel oil readily percolated to the subterranean waters beneath the point where the said gasoline was discharged from the said tank truck * * *; that after said gasoline and fuel oil percolated through the said subterranean waters it was emitted and discharged into the spring waters used by the plaintiff for the raising of trout fish."

In paragraphs 6 and 7 it was alleged:

"(6) That as a result of the dumping of the said gasoline and fuel oil as aforesaid, the percolated waters carried the said gasoline and fuel oil to the premises owned by the plaintiff, and used by the plaintiff as aforesaid, for the raising of trout fish, and thereby rendering the said water used by the plaintiff unfit for use by the plaintiff for said business purpose; that the plaintiff's complete and total inventory of trout, numbering 70,000, suffocated and died as a result of the gasoline and fuel oil entering the said Ozark Trout Farm premises.

"(7) That the negligence of the defendant, Hurrelbrink, while acting in the scope of his employment, was the direct and proximate cause of the damages suffered by the plaintiff as stated above."

In the answer of the defendants filed December 6, 1971, they specifically denied the material allegations set forth in the complaint, and affirmatively pleaded that the alleged conduct of the defendants cannot be the proximate cause of

the injuries complained of for the reason that such alleged injuries were not the natural and probable consequences of the alleged conduct, and for the further reason that the defendants, as ordinary prudent persons, could not have foreseen such consequence, and if such injuries occurred as alleged, they were caused by an intervening efficient cause.

On December 23, 1971, Judge Williams entered an order allowing plaintiff to file an amendment to the complaint, in which plaintiff alleged that the defendants were transporting a highly inflammable fuel oil and that they owed to the public the duty to exercise care commensurate with the danger of the transportation of said fuel oil, which duty was violated by them, and they should be held absolutely and strictly liable for the damages committed to the property of other persons by the escape of the said fuel oil. "That the plaintiff, Ozark Industries, Inc., hereby pleads the doctrine of absolute and strict liability and states that the defendants should be held responsible for plaintiff's damages, even though it may be found that defendants could not have foreseen the actual damage that occurred to this plaintiff."

Plaintiff further alleged that since defendants had exclusive care, control and management of the tank truck, that the doctrine of res ipsa loquitur applies.

The plaintiff, Ozark, is a corporation organized and existing under the laws of the State of Arkansas with its principal place of business in Washington County, Arkansas. The defendant Stubbs is a corporation organized and existing under the laws of the State of Oklahoma. Hurrelbrink is a resident and citizen of the State of Oklahoma. The amount in controversy exceeds the sum or value of $10,000, exclusive of interest and costs. Thus the court has jurisdiction of the parties and the subject matter, 28 U.S. C.A. § 1332.

The substantive law of Arkansas controls and defines and determines the rights of the parties.

In the motion for summary judgment the defendants alleged that the pleadings filed herein, together with the answers to interrogatories and depositions filed in this matter, show that there is no genuine issue as to any material fact, and that they are entitled to a judgment as a matter of law.

In the response the plaintiff denied the material allegations contained in defendants' motion, and alleged that there is a genuine issue as to material facts and that the motion of defendants should be denied.

■■ The burden is upon the movants to establish that there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

On the morning of November 5, 1971, the defendant Hurrelbrink, a duly licensed operator of motor vehicles and an experienced driver of 14 years, and an employee of defendant Stubbs, left the plant of Texaco Co., Inc., in Tulsa, Oklahoma, about 7:30 a. m. driving a 1968 Crane carrier truck with tank trailer attached containing gasoline for delivery to Texaco Co., Inc., at Rogers, Ark.

According to the second amendment to the complaint, filed August 9, 1972, John Flake, an employee of Stubbs, was driving a tank carrier truck immediately in front of Hurrelbrink. Flake failed to keep a proper lookout and thus failed to see a vehicle traveling in front of the truck he was driving, and when he did see it, he applied his brakes and slid 50 feet. Apparently from the pleading in the original complaint and the second amendment thereto, Hurrelbrink attempted to avoid striking the truck being driven by Flake, and in order to miss the Flake truck he had to go to the right, which caused his truck to enter the ditch along highway 68 causing the gasoline and fuel oil to spill into the

ditch adjacent to said highway. On that date the plaintiff was operating a trout farm at Johnson, Arkansas, a distance of approximately 5 miles by highway from where the truck overturned and a distance of 2.9 airline miles southwest of the point where the truck overturned. The trout farm utilized an exceptionally large spring with an output of 1½ to 2 million gallons of water each 24-hour period. On the next day, November 6, the fish that were in a pool fed by the spring began showing signs of illness and a great number of them died. In view of the conclusion that the court has reached it is not necessary to discuss the cause of the death of the fish or the market value thereof. The question is whether defendants are liable. If so, a separate hearing will be held to determine the damages.

Mr. James Wyatt, who up until March 1, 1972, had been employed for approximately two years by Escomlab, a division of McClelland Engineers, in charge of the water and waste water laboratory, ran some tests on the water in the spring, and in his deposition testified:

Q. Let me ask it this way: do you know where the spring water, that bubbles up out of the ground out at the Ozark Trout Farm, comes from, other than out of the ground?

A. Factual—or—?

Q. Yes, based on tests that have been run—on experiments that have been made, based on anything that you have read or you have been taught in your training; does anyone have any idea where the source of the water that bubbles up out of the ground at Ozark Trout Farm comes from?

A. No, I don't personally.

Q. You have never run any tests on this? You don't know of anyone else who has?

A. No.

Mr. Leroy Johnson, 36 years old, has lived in that area all of his life. He is one of the stockholders of the plaintiff corporation, owner of the trout farm, and has been manager of it since May 1965. He testified that he had absolutely no idea from where the water in the spring came, and that it could "easily" come from a thousand miles away as far as he knew. The terrain is fairly level along the highway in Springdale where the truck overturned, and the surface waters from that point run north or northwest and not south toward the trout farm.

Mr. Johnson gave his deposition on March 3, 1972, in which the following questions were propounded and answered:

Q. You also don't know any reason why anyone, even in the Johnson or Springdale area, would have any inkling that if something was spilled in that ditch up there it would end up in any spring, do you?

A. No, sir.

Q. You don't have any reason to believe that Mr. Hurrelbrink over in Oklahoma would have any way of knowing that might occur, do you?

A. No, sir.

Counsel for the parties have submitted briefs in support of their respective contentions.

The defendants contend that their motion should be sustained for all or any of the following reasons:

"(a) Even if it is assumed that the accident in question caused the alleged injuries, the defendants were not negligent as to this plaintiff in that it was not foreseeable that the alleged conduct would have caused damages to plaintiff.

"(b) Even if it is assumed that the occurrence resulted in the alleged damages to the plaintiff, the defendants are not liable because such damages were caused by an efficient, intervening cause.

"(c) The plaintiff has proved by its own witnesses that its alleged damages were not caused by the accident in question."

The plaintiff contends that the motion should be denied "for the reason that there are several crucial and material fact questions to be decided by the jury. Some of the questions which should go to the jury are: (1) negligence on the part of the defendant, (2) the questions relating to strict liability and res ipsa loquitur, and (3) the question of damages."

The court is of the opinion that the contentions of the plaintiff should be discussed first.

On the question of liability, the plaintiff in its brief relies upon the doctrine of strict or absolute liability and cites in support thereof Section 165 of the Restatement of Torts 2d. That section merely establishes that if the doctrine of strict or absolute liability applies, then the person allegedly harmed does not have to show negligence on the part of the person causing the harm, but the mere fact that the injury occurred is sufficient.

The plaintiff, beginning on page 3 of its brief filed with this court, has also cited several cases which it contends support its claim of strict or absolute liability. The court has examined each of the cases cited by plaintiff. The first case relied upon is South Arkansas Oil Co. v. Livingston (1971) 250 Ark. 374, 465 S.W.2d 119. In that case suit was brought against a gasoline station owner and seller of gasoline for damages caused by fire which occurred while gasoline was being pumped into the gasoline storage tanks. The person who was supposed to watch the procedure left the gasoline running while he went for a cup of coffee. The gasoline overflowed, caught fire and caused substantial damage to the adjoining property. The court in disposing of the case required a showing of substantial evidence of negligence on the part of the defendant and that such negligence was the proximate cause of the damages. The court at page 376 of 250 Ark., page 120 of 465 S.W.2d, in quoting from Tri-County Gas & Appliance Co. v. Charton (1959) 229 Ark. 989, 320 S.W.2d 103, said:

" 'In actions for damages on account of negligence plaintiff is bound to prove not only the negligence, but that it was the cause of the damage. This casual connection must be proved by evidence, as a fact, and not be left to mere speculation and conjecture.' "

Gibson Oil Co. v. Sherry (1927) 172 Ark. 947, 291 S.W. 66, is cited in support of the contention that gasoline is a highly dangerous substance. That case was a suit to recover damage to personal property caused by spilled gasoline at a service station. The court at page 949 of 172 Ark., page 67 of 291 S.W. said:

"This court has held that in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent the escape of gas from its pipes proportionate to the dangers which it is its duty to avoid, and that if it fails to exercise this degree of care and injury results therefrom the company is liable, provided the person suffering the injury, either in person or in property, is free from contributory negligence."

The court did not impose any doctrine of absolute liability on handlers of gasoline but merely held that such handlers must take care to avoid injury to others, and if such care is not taken, they are negligent and liability will be imposed.

Another case cited by plaintiff is Sinclair Refining Company v. Gray (1935) 191 Ark. 175, 83 S.W.2d 820. This was a suit to recover damages received by appellees caused by an explosion of a gasoline tank. The court at page 179 of 191 Ark., page 822 of 83 S.W.2d said:

"The appellant was not an insurer, but it was bound to exercise such care and diligence as to avoid injury to the health and property of others by the escape of gas. The care and diligence should always vary according to the

exigencies which require vigilance and attention. A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business which involves little or no risk." (Citations omitted.)

"In the instant case, if the evidence showed that the appellant had used reasonable care, it would not be liable * * *."

In Constantin Refining Company v. Martin (1922) 155 Ark. 193, 244 S.W. 37, the defendant had drilled a gas well and struck gas. The well was capped and a few days later gas began to escape from a fissure in the surface of the earth at a point 950 feet from the well. A 14-year old girl was burned to death by escaping gas from the fissure. The administrator of her estate filed suit and was awarded a verdict. The Supreme Court of Arkansas, in reversing the case, at pages 199–200 of 155 Ark., at page 39 of 244 S.W. said:

"Liability of the defendant is asserted on account of the use by it—a legitimate use without negligence—of a dangerous substance, which, by being ignited, caused the injury. In support of this contention, learned counsel for the plaintiff invoke the rule announced by the English court in the case of Fletcher v. Rylands, L. R. 1 Exch. 265, 1 Eng.Rul.Cas. 235. The facts of the case just cited were entirely different from the present case in that the injury resulted from the act of the defendant in constructing on its own land a reservoir for impounding water by artificial means, and the court held that the defendant was responsible for damages to an adjoining mine on account of the escape of the water. The doctrine of that case has not been generally accepted in this country, and we think that in its full scope it is directly in conflict with the decisions of this court, for we have held that liability is not incurred by the legitimate use of a dangerous substance unless there is negligence, either in its use or in failing to guard against injury. S. W. Tel. & Telephone Co. v. Beatty, 63 Ark. 65, 37 S.W. 570; S. W. Tel. & Telephone Co. v. Bruce, 89 Ark. 581, 117 S.W. 564; Pittsburg Reduction Co. v. Horton, 87 Ark. 576, 113 S.W. 647, 18 L. R.A.(N.S.) 905; St. L. & S. F. R. Co. v. Williams, 98 Ark. 72, 135 S.W. 804, 33 L.R.A.(N.S.) 94."

In Chapman Chemical Co. v. Taylor (1949), 215 Ark. 630, 222 S.W.2d 820, the Supreme Court applied the doctrine of strict liability against the manufacturer of a new chemical, 2-4-D, which it had manufactured and placed on sale without making proper tests to determine the floatability of the chemical when applied by the use of airplanes as was customary in the application of other chemicals used by rice growers to destroy grass and noxious weeks. At page 644 of 215 Ark., at page 827 of 222 S. W.2d the court said:

"We do not think the Chemical Company excused itself from liability by the mere showing that it was unaware of the peculiar carrying quality of the dust it was selling. Ordinary care required that it should know in view of the dangerous nature of the product it was selling, and it was charged with the knowledge which tests would have revealed. The case is therefore one in which the rule of strict liability should be applied."

See, Higgins v. General Motors Corp., (1970) 250 Ark. 551, 554–555, 465 S.W. 2d 898.

Since the doctrine or theory of strict liability is inapplicable to the undisputed facts, the court will proceed to consider the other contentions of plaintiff.

It is difficult to determine from the brief whether plaintiff contends that the transportation of gasoline on the highway in tank trucks is an ultrahazardous activity.

Section 519 of Restatement of Torts, page 41, is as follows:

"Except as stated in §§ 521–4, one who carries on an ultrahazardous ac-

tivity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

Section 520 at page 42 defines ultrahazardous activity as follows:

"An activity is ultrahazardous if it

(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

(b) is not a matter of common usage."

In Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp., (N.D.Cal.1954) 123 F.Supp. 720, the plaintiff was suing for damages arising out of two instances in the building of a dam on the American River. The defendant built two cofferdams to divert the water so that the principal dam and its appurtenances could be constructed. Plaintiff was engaged in the building of a power plant. On two occasions, within a few months of each other, the water washed away the cofferdams and destroyed the plaintiff's construction. Four causes of action are based on each flood. Causes of action one and two are based on the doctrine of absolute liability. Causes three and four are based on absolute liability in the handling of a dangerous instrumentality. Causes of action five and six are based on negligence with specific acts of negligence alleged. The District Court, in discussing the claims based on the doctrine of ultrahazardous activity, referred to the opinion in Luthringer v. Moore, 31 Cal.2d 489, 190 P.2d 1, with approval, in which was quoted the sections of Restatement above set forth.

In Flanagan v. Ethyl Corp., (3d Cir. 1968) 390 F.2d 30, the plaintiff was claiming damages because of the death of her husband who was fatally injured while acting within the course of his employment with Atlantic Richfield Company. The deceased was filling a tank truck with oil when the explosion occurred which caused his death. In discussing the claim made by the plaintiff of absolute liability, the court, beginning at page 31, said:

"Nor is there any assistance to appellant in Restatement's view of ultrahazardous activity as involving 'a risk of serious harm * * * which cannot be eliminated by the exercise of utmost care, and (b) is not a matter of common usage.' (Emphasis supplied). Section 520 Restatement Torts. It is certain that the deceased's work was not designed to produce the explosion. There was a possibility but certainly no expectation of that sort of event occurring in the work in which deceased was engaged which is common usage practice of oil refineries and the like."

The transportation of gasoline in tank trucks from the distributing centers to filling stations is a matter of common everyday occurrence of which the court may take judicial notice. Counsel have not cited any case holding that such transportation is ultrahazardous, and the only case that the court has been able to find by an independent investigation is the case of Collins v. Liquid Transporters (Ky.1953), 262 S.W.2d 382, in which the court said:

"In action against a licensed carrier and an oil company for damages from fire allegedly caused by the negligent operation of a tank truck containing gasoline which was being transported for defendant oil company to one of its distributing centers, oil company was not liable for damages allegedly caused by non-negligent operation of tank truck, because transportation of gasoline is no longer considered such an uncommon affair as to qualify it as an ultrahazardous activity." (The above is a comment at page 190 of Restatement of Torts, 1965 Supp., p. 190.)

This leaves for discussion the question of whether the defendants were negli-

gent as to plaintiff in that it was not foreseeable that the alleged conduct of defendants would have caused damage to the plaintiff.

The defendants in their brief on page 4 state:

"However, even if it is assumed for the sake of argument that the fish kill was caused by the gasoline spill, it is still abundantly clear that this motion for summary judgment should be sustained and a summary judgment granted on the grounds that the alleged acts of Robert D. Hurrelbrink were not negligent as to this plaintiff because such alleged conduct was not the natural and probable result of his acts, and he could not, nor could any person of ordinary prudence, have even guessed that his alleged conduct would have caused the damages complained of by the plaintiff."

The facts relative to the issues of foreseeability and intervening cause are uncontroverted.

Reference has heretofore been made to the uncontroverted testimony of James Wyatt, a chemist, and Leroy Johnson, a stockholder and manager of the plaintiff corporation. In fact, no one who was familiar with the territory would have foreseen that the spilling or pouring of the gasoline into the highway ditch at the place where the truck overturned would result in killing fish at or near Johnson, Arkansas. This being true, it is inconceivable that Hurrelbrink, a resident of Oklahoma, while driving a tank truck down the highway at Springdale, Arkansas, five miles by highway and 2.9 miles by air from the trout farm should have known that if he drove the truck in a negligent manner, he might kill trout in the trout farm and thus cause damage to the plaintiff.

In § 50, Unforeseeable Consequences, p. 288, of Prosser on Torts, 3d Ed., it is stated:

"Negligence, it must be repeated, is conduct which falls below the standard established by law for the protection of others against unreasonable risk.

It necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger. If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence, and no liability."

▮ The case before the court is strikingly similar to the case of Palsgraf v. Long Island Railroad Co., (1928) 248 N.Y. 339, 162 N.E. 99. In that case a passenger was running to catch one of defendant's trains. The defendant's servants, in trying to assist him to board the train, dislodged a package from his arms and it fell upon the rails. The package contained fireworks, which exploded with some violence. The concussion overturned some scales, many feet away on the platform and they fell upon the plaintiff and injured her. The defendant's servants, who were found by the jury to have been negligent in what they did, could have foreseen harm from their clumsiness to the package, or at most to the passenger boarding the train; but no harm to the plaintiff could possibly have been anticipated. Under the facts, Judge Cardozo held that there was no liability because there was no negligence toward the plaintiff who was injured when the scales were overturned by the concussion. He said negligence was a matter of relation between the parties, which must be founded upon the foreseeability of harm to the person in fact injured. The defendant's conduct was not a wrong toward plaintiff merely because such conduct was negligent toward someone else.

In § 281, Restatement of Torts, 2d, the learned authors used the following illustration at page 5:

"A is driving a car down the street. He drives so carelessly that he collides with another car. The second car contains dynamite. A is ignorant of this and there is nothing in its appearance or in the circumstances to give him reason to suspect it. The collision

causes an explosion which shatters a window of a building on an intersecting street, half a block away, inflicting serious cuts upon B, who is working at a nearby desk. The explosion also harms C, who is walking on the sidewalk near the point where the collision occurs. It also shatters the windows in the building opposite, injuring D at work therein. A is not negligent toward B, since he has no reason to believe that his conduct involved any risk of harming anyone at the point where B is injured. A is negligent toward C since he should have realized that careless driving might result in an accident which would affect the safety of those traveling upon the sidewalk, and the fact that the harm occurred in a different manner from that which might have been expected does not prevent his negligence from being in law the cause of the injury. Whether or not A is negligent toward D depends upon whether A as a reasonable man should have expected that the manner in which he drove the car might cause harm to persons in D's situation."

In 1908 the court decided the case of Ultima Thule, Arka. & Miss. Rd. Co. v. Benton, 86 Ark. 289, 110 S.W. 1037, in which the facts were stated as follows:

Crouch was an employee of defendant and the foreman of a track-laying crew working 17 miles from Dalark. The railroad carried the construction crews to and from their work on its trains. Flat cars were used upon which there were no seats, and the employees were accustomed to sit on the sides with their feet hanging over. They often carried wood on the train and threw it off as they approached their respective residences. The foreman was riding on the train with his legs dangling off of a flat car when one of the other employees threw some wood off a car. One stick rebounded and struck the foreman on his leg causing serious injury and probably his death. The administrator sought to recover and did so in the lower court upon the theory that he was a pas-

senger and that the company must protect him as such, and that it was negligent in its duty to its passengers on the flat car by permitting other employees to throw off sticks of wood. The court at page 291 of 86 Ark., page 1038 of 110 S.W. said:

"If all of the appellee's contentions be conceded, still he is not entitled to recover. 'It is generally held that, in order to warrant a finding that negligence * * * is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' Milwaukee, etc., Ry. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256; Scheffer v. Railroad Company, 105 U.S. 249, 26 L.Ed. 1070; St. Louis, I. M. & S. Ry. Co. v. Bragg, 69 Ark. 402, 64 S.W. 226, 86 Am.St.Rep. 206. See also Railway Company v. Fire Association, 55 Ark. 163, 18 S.W. 43.

"The question of proximate cause is ordinarily one of fact for the jury. But, where the facts are undisputed, and not such as reasonable men would likely draw different conclusions from, then it is a question for the court, and such is this case.

"The rebound of a stick of wood thrown from a flat car in such a way as to strike the legs of a man sitting upon the car is an accident, pure and simple, and not one of the consequences that 'ought to have been foreseen in the light of the attending circumstances' in permitting employés to occasionally throw wood from the train."

In 57 Am.Jur.2d, Negligence, § 161, at page 524, the rule on possibility of injurious consequences is stated as follows:

"In accordance with the general test of proximate cause above set forth, the law does not charge a person with all the possible consequences of his negligent act. While the plaintiff is not required to prove with certainty

that the defendant's act caused the damage, the test is one of probability, and the evidence must be such as to justify an inference of probability as distinguished from mere possibility. He is not responsible for a consequence which is merely possible, according to ordinary and usual experience.

"It has been said that the natural and probable consequences are those which human foresight can anticipate because they happen so frequently that they may be expected to happen again, and that the possible consequences are those which happen so infrequently that they are not expected to happen again."

The case of St. Louis, I. M. & S. Ry. Co. v. Bragg, (1901) 69 Ark. 402, 64 S. W. 226, was a case where the plaintiff, a passenger on the defendant railroad, was let off of a train at a point where she was required to cross a cattle guard to get to her home. She alleged that the prospect of having to cross the cattle guard at night caused her mental anguish and her health was permanently damaged. The jury awarded her damages but the Supreme Court reversed holding that before the plaintiff could recover damages on account of the unintentional negligence of the defendant, it must appear that the injury was the natural and proximate cause thereof and that it ought to have been foreseen in the light of the attending circumstances. In the opinion the court, in quoting from Scheffer v. Railroad Company, (1881) 105 U.S. 249 said:

"It is a fundamental rule of law that to recover damages on account of the unintentional negligence of another it must appear that the injury was the natural and probable consequences thereof, and that it ought to have been foreseen in the light of the attending circumstances."

The case of Alaska Lumber Co. v. Spurlin, (1931) 183 Ark. 576, 37 S.W.2d 82, was a case in which one of the defendant's employees was driving a team of mules skidding logs out of the woods when his team became unruly and ran astride a bush or sapling. This angered the driver of the contrary team, causing him to speak to his team in a "loud and unusual tone of voice." Plaintiff was driving another team of mules some 30 to 50 yards away and the loud and unusual yelling caused the second team to run away seriously injuring the plaintiff. At page 577 of 183 Ark., page 83 of 37 S.W.2d the court said:

"Assuming, for the sake of argument, that Dickson spoke to his mules in a loud tone of voice and whipped them when they became unruly, yet the fact is he was 30 to 50 yards from appellee, could not see him, and did not know he was there, and did not know he was hurt until he saw others taking him out. He therefore could not have anticipated that his actions were likely to cause any damage to another, and neither could the master. As said by this court in Wisconsin & Arkansas Lumber Co. v. Scott, 153 Ark. 65, 239 S.W. 392: 'To constitute actionable negligence there must be negligence and injury resulting as the proximate cause of it. Proximate cause has been defined as a cause from which a person of ordinary experience and sagacity could foresee that the result might probably ensue.'"

In Hill v. Wilson, (1949) 216 Ark. 179, at page 183, 224 S.W.2d 797, at page 800, the court said:

"The concept of actionable negligence is relational because an act is never negligent except in reference to, or toward some person or legally protected interest. In other words, a negligent act is one from which an ordinary prudent person in the actor's position —in the same or similar circumstances—would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner."

In Collier v. Citizens Coach Co., (1959) 231 Ark. 489, at page 492, 330 S.W.2d 74, at page 76, the court said:

"It should be remembered that while negligence must proximately

cause a given result in order to justify a finding for the plaintiff on the allegations of the complaint; or a finding for the defendant on allegations of contributory negligence; negligence and proximate cause are two separate and independent things. Foreseeability is an element in the determination of whether a person is guilty of negligence and has nothing whatever to do with proximate cause.

"Black's Law Dictionary defines 'proximate cause' as:

"'That which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.'

Proximate cause is inherent in every personal injury without regard to whether the injury was caused by negligence, unavoidable accident or act of God. In other words, every end result has a proximate cause but every proximate cause is not induced by negligence. When a carpenter drives a nail into a board, the striking of the nail with the hammer is the proximate cause of the nail's entering the board but no negligence is involved. In other words, proximate cause is a rule of physics and not a criterion of negligence."

In Hartsock v. Forsgren, Inc., (1963) 236 Ark. 167, 365 S.W.2d 117, the plaintiff in her complaint alleged that defendant in the course of its business maintained a large tank for the storage of tar; that despite repeated protests from the plaintiff and her neighbors, the defendant allowed the tar to spill over so that it flowed from the defendant's premises into an area where the plaintiff's son and other members of the public were accustomed to walk and play. The son walked into the tar to such a depth that his feet were covered to his ankles. When the child reached home, his parents took the child to the middle of his backyard to remove the tar by the application of gasoline, which according to the allegation was the only effective cleaning substance available at that time. While the parents were so engaged, a second child ran into the yard and unexpectedly exploded a cap pistol creating a spark which ignited the gasoline fumes, resulting in serious burns to the legs of the plaintiff's son. The court, after indicating that the defendant was negligent in allowing the tar to overflow in the area of the playground, stated:

"To be negligent a person must be in a position to realize that his conduct involves a hazard to others."

The court quoted from Hill, supra, and from Collier, supra, the same language as heretofore set out by the court. At page 170 of 236 Ark., page 118 of 365 S. W.2d the court said:

"To hold that this defendant was under a duty to guard against the remote chance of what actually occurred in this case would be in effect to strike the element of foreseeability from the concept of negligence * * *."

On the same day that Hartsock was decided the court decided Jeffery v. Gordon, (1963) 236 Ark. 180, 365 S.W.2d 128. In that case the defendant, while operating a truck loaded with baled hay, parked the same beneath an overpass. The hay caught fire and burned causing damage to the overpass. The plaintiff, a contractor, who was required to repair the overpass before it was accepted by the Arkansas Highway Department filed suit, and at the close of the trial the court directed a verdict which the Supreme Court affirmed. It was conceded that the defendant was negligent in leaving the hay at that point, but the court, after stating that defendant was not negligent unless the act complained of was of such a nature that the consequent injury should be one in the light of attending circumstances that a person of ordinary foresight and prudence would have anticipated, held there was no negligence for lack of foreseeability. The evidence tended to show that the hay ignited because of spontaneous com-

bustion, but the court held that there was no evidence that the appellee could have or should have foreseen the consequences.

In the instant case Hurrelbrink could not foresee what would happen because such a thing was unheard of and would happen so rarely. If Hurrelbrink was in fact negligent in causing his truck to overturn, he was negligent only to those persons and for the consequences of the act which a reasonably prudent person would have foreseen. In other words, if his turning the truck over had proximately caused damage to another person which, in the exercise of due care, was foreseeable, the defendants would have obviously been liable.

In Harrelson v. Whitehead, (1963) 236 Ark. 325, at page 329, 365 S.W.2d 868, at page 870, the court said:

"The law very wisely does not require appellee to guard against a hazard of which he was not aware and could not have been aware of by the exercise of due care."

North Little Rock Transportation Co. v. Finkbeiner, (1967) 243 Ark. 596, 420 S.W.2d 874, was a case where the defendant allowed a water sprinkler to operate until it had caused water to flow from his lawn and down the street approximately a block where it crossed the street. The plaintiff's cab traveling on the street skidded on the wet surface caused by the water from the sprinkler, damaging the cab. Evidence showed that on previous occasions when the sprinkler system was used, the water flowed along a curb and into a drain past the point of the accident and not across the street. The trial court directed a verdict in favor of the defendant which was affirmed on appeal. The court held that it was unreasonable to charge the defendant with constructive knowledge not only that the water would cross the road, but that a car traveling up the hill would skid on the wet surface. At page 602 of 243 Ark., at page 878 of 420 S.W.2d, the court said:

"If risks of harm cannot be foreseen by a reasonably prudent and intelligent man, the risk is not unreasonable, hence there is no negligence, consequently no liability."

In the above case as well as the Hill case, supra, the court cited the Palsgraf case, supra, with approval.

Even if Hurrelbrink was guilty of negligence in allowing the tank truck to go into the ditch in an effort to avoid striking a truck traveling in front of him, the undisputed facts establish without doubt that such was not the proximate cause of the damage suffered by the trout farm. At page 183 of 216 Ark., page 800 of 224 S.W.2d, Hill v. Wilson, supra, the court held:

"Negligence in a tort defendant is one thing, and proximate causation as a relation between negligence and injury is a separate and different thing. Yet the two things shade into each other."

An intervening cause shades into and sometimes becomes almost indistinguishable from foreseeability. Regardless of whether an intervening cause is considered as a part of the question of foreseeability or is considered as a separate subject, there can be no question that the alleged action of the subterranean water in carrying the gasoline from the point of the accident to the trout farm was an efficient intervening cause, and the defendants are not liable.

In Prosser on Torts, 3d Ed., § 51, p. 310, the learned author states:

"The number and variety of causes which may intervene after the negligence of the defendant is an accomplished fact, is obviously without any limit whatever. In the effort to hold the defendant's liability within some reasonable bounds, the courts have been compelled, out of sheer necessity

and in default of anything better, to fall back upon the scope of the original foreseeable risk which he has created. The question is always one of whether he is to be relieved of responsibility, and his liability superseded, by the subsequent event. In general, this has been determined by asking whether the intervention of the later cause is a significant part of the risk involved in the defendant's conduct, or is so reasonably connected with it that the responsibility should not be terminated. It is therefore said that the defendant is to be held liable if, but only if, the intervening cause is 'foreseeable.' "

In Restatement of Torts, 2d, § 441, an intervening force is defined as follows:

"(1) An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed."

In determining whether an intervening force is a superseding cause, it is stated in § 442, as follows:

"The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation; "

Section 451 is as follows:

"An intervening operation of a force of nature without which the other's harm would not have resulted from the actor's negligent conduct prevents the actor from being liable for the harm, if

(a) the operation of the force of nature is extraordinary, and

(b) the harm resulting from it is of a kind different from that the likelihood of which made the actor's conduct negligent.

\*      \*      \*      \*      \*      \*

"Comment:

"a. In order that an extraordinary operation of a natural force may relieve from responsibility an actor whose negligence has created a situation upon which the natural force has operated, the harm brought about by the intervention of the force of nature must be of a completely different sort from that which the actor's negligent conduct threatened and which would not have resulted had the operation of the force of nature not been extraordinary."

In Prosser Law of Torts, 3d Ed., page 320, the following appears:

"Unforeseeable Results of Unforeseeable Causes.

"If the defendant can foresee neither any danger of direct injury, nor any risk from an intervening cause, he is simply not negligent. Negligence cannot be predicated solely upon a failure to anticipate that extraordinary and unprecedented rainfall will flood the streets, that a pedestrian will slip and fall upon an apparently safe highway, that the wind will blow a door latch against the eye of a boy, or that a ribbon held across a street to stop a wedding procession will cause one carriage to run into another. But once the defendant's negligence is established, because injury of some kind was to be anticipated, inter-

vening causes which could not reasonably be foreseen, and which are no normal part of the risk created, may bring about results of an entirely different kind.

"It is here at least that the line must of necessity be drawn to terminate the defendant's responsibility. The courts have exhibited a more or less instinctive feeling that it would be unfair to hold him liable. The virtually unanimous agreement that the liability must be limited to cover only those intervening causes which lie within the scope of the foreseeable risk, or have at least some reasonable connection with it, is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by the defendant are infinite, and that as a practical matter responsibility simply cannot be carried to such lengths.

"Accordingly, it has been held that the defendant is not liable for the results of unforeseeable, abnormal forces of nature, such as unpredictable storms or floods; * * * "

The uncontroverted facts and circumstances show there is no genuine issue as to any material fact and that the defendants are not liable for the loss allegedly suffered by the plaintiff, and are entitled to a judgment of nonliability as a matter of law.

Therefore, judgment is being entered today holding that the defendants are not liable to the plaintiff for any damages; granting the motion of defendants filed September 1, 1972, for summary judgment; dismissing the complaint of plaintiff filed November 24, 1971, the amendments thereto filed December 23, 1971, and August 9, 1972; and adjudging costs against the plaintiff.